IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

Eduardo Rosario,                     :    CIVIL ACTION
                                     :    NO. 19-2222
          Plaintiff                  :
     v.                              :
                                     :
Alex Torres Productions,             :
Inc., et al.,                        :
                                     :
          Defendants.                :

## ORDER

**AND NOW**, this **13th** day of **January, 2020**, after a
hearing in open court on December 20, 2019, with Alex Torres
present, and neither Eduardo Rosario nor La Guira, Inc.,
present, it is hereby **ORDERED** that:

1. The Default (ECF No. 4) is **STRICKEN;**[1]

2. The Complaint (ECF No. 1) is **DISMISSED;**[2]

3. The Court retains jurisdiction for 90 days to

   consider referral of Steven C. Feinstein, Esq., and

   Joseph D. Lento, Esq., to the relevant disciplinary

---

[1]    No evidence supporting entry of a default judgment was presented by
Plaintiff at the hearing.

[2]    The complaint is dismissed for failure to prosecute.  Plaintiff's
counsel of record failed to appear in person at the initial pretrial
conference.  He was contacted by telephone and represented to the Court that
he was no longer plaintiff's counsel in this matter (a copy of the
transcripts containing this representation is attached hereto).  Judicial
economy is advanced by dismissal of the case without prejudice so counsel of
record can sort out the issue of Plaintiff's representation.  Because this
dismissal is without prejudice, the Court does not need to apply the Poulis
factors before dismissing the case for failure to prosecute.  Cf. Poulis v.
State Farm Fire & Cas. Co., 747 F.2d 863, 868 (3d Cir. 1984) (requiring
consideration of six factors before dismissing a case with prejudice due to
noncompliance with a court order).  If the complaint is refiled, it shall
include legal authority for the proposition that a promoter may be held
liable under the circumstances presented in this case.

board and to consider imposing monetary sanctions on
Steven C. Feinstein, Esq., Joseph D. Lento, Esq.,
and Optimum Law Group, P.C., under Rule 11, 28
U.S.C. § 1927, and the Court's inherent power;[3]

4. A Rule is **ISSUED** for Steven C. Feinstein, Esq.,
   Joseph D. Lento, Esq., and Optimum Law Group, P.C.,
   to show cause, by **February 10, 2020**, why sanctions
   should not be imposed;

5. Steven C. Feinstein, Esq., is directed to withdraw
   his appearance for the plaintiff; and

6. Steven C. Feinstein, Esq., is directed to serve a
   copy of this Order on Joseph D. Lento, Esq., and
   Eduardo Rosario.

**AND IT IS SO ORDERED.**


_/s/ Eduardo C. Robreno_
**EDUARDO C. ROBRENO, J.**

---

[3]  Plaintiff's counsel of record represented to the Court conduct which
constitute prima facie violations of the Pennsylvania Rules of Professional
Conduct and Rule 11 of the Federal Rules of Civil Procedure (a copy of the
transcripts containing these representations is attached hereto).

2

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EDUARDO ROSARIO, | : | CIVIL CASE |
| | : | |
| Plaintiff(s) | : | Case No.  2:19-cv-02222-ER |
| | : | |
| v. | : | Philadelphia, Pennsylvania |
| | : | December 20, 2019 |
| ALEX TORRES PRODUCTIONS, | : | Time 10:28 a.m. to 10:50 a.m. |
| INC, et al | : | |
| | : | |
| Defendant(s) | : | |

. . . . . . . . . . . . . .

TRANSCRIPT OF PRETRIAL CONFERENCE
BEFORE THE HONORABLE EDUARDO C. ROBERENO
UNITED STATES DISTRICT COURT JUDGE

APPEARANCES:

For the Plaintiff(s):      Steven C. Feinstein
                           Feinstein Law Office
                           107 Wayne Court
                           West Chester, PA 19380

For Defendant Name:        Alex Torres, Pro Se
                           Alex Torres Productions, Inc
                           651 Weybridge Court
                           Lake Mary, FL 32746
                           City, State Zip

Court Recorder:            Kenneth Duvak
                           Clerk's Office
                           U.S. District Court

Transcription Service:     Precise Transcripts
                           45 N. Broad Street
                           Ridgewood, NJ 07450

Proceedings recorded by electronic sound recording; transcript
produced by transcription service.

1            (Proceedings started at 10:28 a.m.)

2            DEPUTY CLERK RONALD VANCE:  All rise.  The United

3    States District Court for the Eastern District of

4    Pennsylvania is now in session.  The Honorable Eduardo C.

5    Roberno presiding.

6            JUDGE EDUARDO C. ROBERNO:  Good morning, please

7    be seated.

8            ALEX TORRES:  Good morning.

9            THE COURT:  Okay.  Is there anyone in the

10   courtroom or on the phone on behalf of the plaintiff

11   Rosario?

12           COUNSEL STEVEN FEINSTEIN:  Your Honor this is

13   Steve Feinstein.  My appearance is entered for Mr.

14   Rosario.  When the complaint was filed in this case it was

15   filed under the law firm of Optimum Law Group and on

16   November 26th I left Optimum Law Group, I subsequently

17   received a letter --

18           THE COURT:  Hold - hold on a second.  What's

19   going on here Kenneth?  There's - there's a phone ringing.

20           ESR KENNETH DUVAK:  I think that's on his end

21   Judge.  I think that's a phone in his office ringing.

22           THE COURT:  Oh okay.  Is that a phone in your

23   office Mr. Feinstein?

24           MR. FEINSTEIN:  No, there's nothing ringing in my

25   office.

1        THE COURT:  Okay.

2        MR. FEINSTEIN:  I do hear that but that not in my

3  office.

4        THE COURT:  Okay.  Okay, well let's proceed.

5        MR. FEINSTEIN:  Your Honor, as I was saying.  I

6  left Optimum Law Group on November 26th just before

7  Thanksgiving and I received a letter from them indicating

8  that I was not to communicate with any clients and not to

9  do anything on behalf of any of their cases.  I instructed

10  them to substitute my appearance in on any of the cases

11  that -- substitute the appearance from anything that I

12  had.  I'd also received a - a part of the exchange of the

13  communications where -- that they were going to absolute

14  change my credentials, my lobbying credentials, to prevent

15  me from lobbying in.  So, the first thing I did after -

16  after I received that was go into all of the various

17  places where I could find --

18        THE COURT:  Now hold on a second.  There is a

19  ringing going on here.

20        MR. FEINSTEIN:  Okay.

21        ESR:  It's not coming in over there.

22        THE COURT:  Okay, let's - let's proceed.  Mr.

23  Fein-

24        MR. FEINSTEIN:  Yes, part of the communications

25  that I received from them was a (indiscernible) to change

1   all of my lobbying credentials on all of the electronic

2   filing notifications and jurisdictions, so I immediately

3   went in and changed my - my passwords and all the contact

4   information which is why it - it's still - it -- when -

5   when I did that it automatically updated my appearance on

6   any case that I was in and changed it to Feinstein -

7   Feinstein Law Office as opposed to Optimum Law Group.  But

8   if you pull up the complaint that was filed, you'll see

9   that it was filed under Optimum Law Group.  They did

10  receive notice of this hearing and I had no explanation to

11  why they didn't send someone over.  I apologize to the

12  Court because obviously if I had known they weren't going

13  to I would've been there.  They have been specifically

14  instructed to substitute my appearance in every case in

15  which I was involved in an Optimum case.  And, I will

16  immediately file a petition to have my formal appearance

17  withdrawn and I will put Optimum on notice of what

18  happened this morning and let them know that, you know,

19  I'm not very happy about what they did, as I'm sure you

20  are not as well.  So, again my apologies to the Court, I

21  did know about this hearing, I did but as I said they were

22  - they were advised of the hearing as well and they

23  should've sent somebody, so.

24          THE COURT:  Now, let me ask you this.  When did

25  this event happen that you were dismissed from Optimum or

1   terminated?

2        MR. FEINSTEIN:  Well actually I resigned from

3   them on October -- on November 26th.

4        THE COURT:  November 26th.

5        MR. FEINSTEIN:  I have --

6        THE COURT:  Okay.

7        MR. FEINSTEIN:  November 26th.  I've also just

8   finished a two-week jury trial and this was, you know, my

9   mind actually wasn't on, you know, my calendar but I have

10  been communicating with them because they owe me money and

11  they owe me information about cases that I - that I

12  retained and they have -- they just stopped communicating

13  with me and I asked them several times to substitute their

14  appearance send (indiscernible) for my appearance, but.

15       THE COURT:  Now, did you - did you - you drafted

16  the complaint in this case?

17       MR. FEINSTEIN:  I believe that I did.  Yeah, I

18  did.  As a matter of fact I did based upon a sample that

19  was provided to me by one of the paralegals at Optimum,

20  but yes, I did draft the complaint.

21       THE COURT:  Yeah, because it's signed by you.

22       MR. FEINSTEIN:  Yeah.

23       THE COURT:  And, there was - there was an issue

24  of whether this promoter was in Florida -- was properly

25  sued in this case and I'm looking to some law that would

1   allow that to - to take place.  Was there any research

2   done here that would warrant suing a promoter an - an

3   artist who performed?

4           MR. FEINSTEIN:  I - I personally did not do any

5   research with regard to that.  The -- I believe that the

6   sample complaint that I had was a similar set of

7   circumstances and -- but the way I read the statute, when

8   I did read the provisions of the statute I - I did read it

9   to include that a promoter could be held responsible under

10  these circumstances.  I - I did 'cause I remember - I

11  remember -- and this a long time ago through, gosh it was

12  several months, and I remember reading this and the way I

13  - I read it I - I thought that the statute was rather

14  extensive and included people who were running promotions

15  at the facility and that they were obligated to - to - to

16  provide access to - to handicap people.

17          THE COURT:  Do you have any - any case law that

18  supports that interpretation?

19          MR. FEINSTEIN:  No, I'm sorry do any specific

20  research with regard to that.

21          THE COURT:  Mm-hm.  Okay.  Well, who is the

22  person at Optimum Law Group, who was the senior person

23  there?

24          MR. FEINSTEIN:  Well the managing attorney is -

25  is a gentleman by the name of Joseph Lento.

1          THE COURT:  Wisro?

2          MR. FEINSTEIN:  Lento, L-E-N-T-O.

3          THE COURT:  Okay, spell - spell it for us again.

4          MR. FEINSTEIN:  L-E-N-T-O.

5          THE COURT:  Oh, Lento.

6          MR. FEINSTEIN:  I also (indiscernible) that he's

7    not admitted in the Eastern District.

8          THE COURT:  Okay.  Okay.  Well, this -- Mr.

9    Feinstein, I - I hope to say a learning lesson.  When your

10   name is on the complaint until your relief from that

11   obligation, you are the lawyer of record.  You can't tell

12   --

13          MR. FEINSTEIN:  You're right sir, I was - I was

14   not careful, I should have taken care of that.

15          THE COURT:  Yeah.

16          MR. FEINSTEIN:  I apologize.

17          THE COURT:  Because you can't just tell somebody

18   else, you know, I'm out of here you take care of it and

19   rely upon that because we rely on the lawyer of record --

20          MR. FEINSTEIN:  Yes.

21          THE COURT:  We have - we have the defendant is

22   here today and he had been inconvenienced by having to

23   show up here when there's nobody here from the other side.

24   And that's --

25          MR. FEINSTEIN:  Well, like I said, I apologize to

1    the Court and I apologize to Mr. Torres --

2              THE COURT:  Yeah.

3              MR. FEINSTEIN:  -- certainly no disrespect was

4    intended.  I, you know, this was -- it is my

5    responsibility because my appearance is entered, but I

6    genuinely thought somebody would be covering it from

7    Optimum --

8              THE COURT:  Right.

9              MR. FEINSTEIN:  -- and I will make sure that my

10   appearance is withdrawn, somebody else is subst-

11   substituted in.

12             THE COURT:  Yeah.  Well, I think the solution to

13   this problem is going to be that we're gonna start, if the

14   Plaintiff wants, all over again.  I'm gonna dismiss the

15   case without prejudice and --

16             MR. FEINSTEIN:  Okay.

17             THE COURT:  -- I'm going to strike - I'm gonna

18   strike the - the default and -- because no lawyer is

19   really representing the Plaintiff in this case --

20             MR. FEINSTEIN:  Okay.

21             THE COURT:  And somebody's gonna have to come up

22   with some cause of action that is supported by - by law.

23   You're handed representation that you didn't do any

24   research concerning bringing in a party to the case.  Is

25   from a (indiscernible) rule 11 sanctionable, but to the

```
1   extent --
2           MR. FEINSTEIN:  But not -- Your Honor, with all
3   due respect, if I viewed the statute as being extensive, I
4   had a good faith basis for - for including that.
5           THE COURT:  No.  Okay, I - I didn't say it was, I
6   said it was from a (indiscernible), okay, case.
7           MR. FEINSTEIN:  Okay.  Okay.
8           THE COURT:  You don't have an explanation for it.
9   So I don't know whether anybody's interested in pursuing
10  this matter but I think that this is something that is
11  troublesome -- now is Optimum Law have any other lawyers
12  other than Mr. Lento?
13          MR. FEINSTEIN:  I'm sorry what, I could
14  understand --
15          THE COURT:  Yeah.  Are there any other lawyers in
16  Optimum Law other than Mr. Lento?
17          MR. FEINSTEIN:  Yes, there are several.
18          THE COURT:  Okay.
19          MR. FEINSTEIN:  But it's sort of a decentralized
20  law firm and people -- it's really kind of a
21  (indiscernible) who are operating under one letterhead --
22          THE COURT:  I - I see.
23          MR. FEINSTEIN:  But they're -- so they're
24  individual counsels, it's not a traditional type law firm
25  --
```

1           THE COURT:  Okay.

2           MR. FEINSTEIN:   -- where - where you go to a

3    central location and -- we're all remote - remote people,

4    well we were, but.

5           THE COURT:  Now, 1615 South Broad, is that where

6    -- let me see, you know, they're - they're located on 1500

7    Market Street.

8           MR. FEINSTEIN:  Yeah, that - that - that is a

9    virtual office.  The primary - the primary office is

10   located in New Jersey.

11          THE COURT:  Yeah.

12          MR. FEINSTEIN:  That's a virtual office, I - I --

13   the 1615 address, I'm not sure why it would've been in the

14   complaint but that's law office of (indiscernible) Conrad

15   Benedetto.

16          THE COURT:  Yeah, right.

17          MR. FEINSTEIN:  Not a member of Optimum but who

18   had - who probably drafted the original complaint that was

19   given to me as a sample.  I -- if that address appears in

20   the complaint it's probably a (indiscernible) error of

21   some kind but I'm not sure since I don't have the

22   complaint in front of me.

23          THE COURT:  Well let's see, the complaint says

24   1500 Market Street and is - is signed by you.

25          MR. FEINSTEIN:  Yes.

1          THE COURT:  In - in there Mr. Benedetto's name is

2     on the docket but is says he was terminated as of July 1,

3     2019.

4          MR. FEINSTEIN: Oh, you know what, that -- he just

5     told me that.

6          THE COURT:  Yeah.

7          MR. FEINSTEIN:  Is my -- the first time I've

8     heard that.

9          THE COURT:  Yeah.

10         MR. FEINSTEIN:  Mr. Benedetto refers cases to

11    Optimum.  I was given it to draft a complaint and - and -

12    and - and to file suit in the case.  I had no idea that

13    the case had actually originated with Conrad or that maybe

14    he had (indiscernible) 'cause when I filed it, I filed it

15    as an original lawsuit with all the original cover sheets.

16    There -- I don't have any idea why Conrad would've been on

17    the docket.  Do you want - do you want the -- the

18    telephone number that's on the complaint is -- I do

19    believe that holds through to (indiscernible) so --

20         THE COURT:  Let's see - let's see what it says

21    here, I think it has a 50 -- he has 267, which I guess is

22    Philadelphia extensively, 833-0200.

23         MR. FEINSTEIN:  Yes, got it.  That went through

24    to the New Jersey office.

25         THE COURT:  Now, have you ever met Mr. Rosario?

1          MR. FEINSTEIN:  Have I met Mr.  -- I have not

2    personally met Mr. Rosario.

3          THE COURT:  Okay.  Okay.  Well --

4          MR. FEINSTEIN:  The - the file's reviewed by

5    others in Optimum --

6          THE COURT:  Yeah.

7          MR. FEINSTEIN:  -- and I was requested to file

8    the complaint.

9          THE COURT:  Yep.  Okay, we are putting your -

10   your name on it and - and you will have -- you have a

11   license to protect so how long have you been practicing

12   law?

13         MR. FEINSTEIN:  Thirty-four years Your Honor.

14         THE COURT:  Okay, so I think you - you know

15   better Mr. Feinstein.  This is -- your whole story, which

16   I appreciate by the way, your candor, is very troubling.

17         MR. FEINSTEIN:  All -- I understand Your Honor,

18   it's one of the reasons why I'm no longer with Optimum.

19         THE COURT:  Yeah.

20         MR. FEINSTEIN:  I had significant concerns about

21   the - some of the ethical things that were going on in

22   that firm and there were other issues that - that were --

23   you know, I don't really want to get into it but there are

24   very significant and specific reasons why I'm no longer

25   with that firm.  I, you know, and I'll be fully candid, I

1   graduated in - in '85', I - I previously had some -- a run

2   in with the disciplinary board and I've been doing

3   everything I possibly can to avoid every having to do that

4   again.  So, I do appreciate and understand everything that

5   you're saying and that's part of the reason why I'm no

6   longer with Optimum because I felt at various times that

7   my license might be at risk based upon things that they

8   were doing.  So -- and again, I wasn't with them all that

9   long.  I started with them in, I think April, and it

10  terminated in November because I just didn't like the way

11  things were going down.  But, in the meantime I do -- I

12  just said -- I do appreciate your comments and I'm taking

13  them to heart and nothing like this will ever happen

14  again.

15          THE COURT:  And you are in West Chester now,

16  right?

17          MR. FEINSTEIN:  Yeah, my office is - my personal

18  office in West Chester, yeah.  But actually you're talking

19  to me on my cell phone so I'm not sitting --

20          THE COURT:  Okay.

21          MR. FEINSTEIN:  -- there right now, but that's

22  where my office is.

23          THE COURT:  At 107 Wayne Court, West Chester,

24  Pennsylvania?

25          MR. FEINSTEIN:  Yes.

1          THE COURT:  Okay.  Very good.  I think we're

2    going to terminate then your participation in this, I said

3    is my intend then to dismiss the case and strike the

4    default and --

5          MR. FEINSTEIN:  Okay.

6          THE COURT:  -- allow you to also -- I'm going to

7    allow you to withdraw from the case.

8          MR. FEINSTEIN:  Okay.

9          THE COURT:  But in the way out of withdrawal you

10   are to serve the copy of the order that I entered in the

11   case upon the Optimum Law Group, PC. and --

12         MR. FEINSTEIN:  I'll - I'll - I'll file - I'll

13   file a copy -- I'll serve them with a copy of my petition

14   and I'll serve them with any order.

15         THE COURT:  And also the extent that you know Mr.

16   Rosario's address, do you know that?

17         MR. FEINSTEIN:  Let me see if I have that.  Hold

18   on.  I have it as 2940 A Waldorf Avenue, Camden, New

19   Jersey.

20         THE COURT:  Okay.  So, you are directed by the

21   Court to serve Mr. Rosario as well as Optimum Law Group,

22   PC --

23         MR. FEINSTEIN:  Okay.

24         THE COURT:  -- with a copy of the order that I'm

25   going to enter in this case --

1          MR. FEINSTEIN:  Okay.

2          THE COURT:  -- and then they'll - they'll have to

3   proceed which ever way they - they would like to.  Okay,

4   thank you Mr. Feinstein.

5          MR. FEINSTEIN:  So -- okay, thank Your Honor I

6   appreciate it.

7          THE COURT:  Thank you.

8          MR. FEINSTEIN:  Thank you.

9          THE COURT:  Thank you.  Okay, good morning.  Sir,

10  would I have your name?

11         MR. TORRES:  Alex Torres.

12         THE COURT:  Okay.  Mr. Torres, let's see, you are

13  the promoter for this --

14         MR. TORRES:  Yes, sir.

15         THE COURT:  Okay.

16         MR. TORRES:  Yes, Your Honor.

17         THE COURT:  Now - now you're from Florida?

18         MR. TORRES:  Yes.

19         THE COURT:  Okay, so you came up for this matter?

20         MR. TORRES:  I drove, I've been driving for two

21  days.

22         THE COURT:  Okay.  Well, what about the - the

23  other defendant has - has the other defendant been served?

24  La Guira?

25         MR. TORRES:  Huh?

1          THE COURT:  Right.  Well no it says here default

2     against La Guira.  Okay, that was entered, right?  Okay.

3     Okay.  Well -- but the hearing today was on -- okay Mr.

4     Torres file and answer, La Guira has not appeared, right?

5     Okay.  Okay.  Well, this is what we're going to do, we're

6     gonna dismiss the case and we'll see where that goes from

7     there.  I think what you should do Mr. Torres, is leave

8     your phone number --

9          MR. TORRES:  Okay.

10          THE COURT:  -- so that if we have further

11     proceeding you may not necessarily have to come from

12     Florida.

13          MR. TORRES:  Thank you.

14          THE COURT:  I think it's been a burden on you

15     that is - is - is - is unfair burden on you to have you -

16     have you drive up here and then there is no one here from

17     the plaintiff's side.  So, let me -- let's - let's go off

18     the record here for a moment.  The Court finds after

19     hearing from counsel for the plaintiff in this case and

20     hearing from defendant Alex Torres Production, Inc. that

21     the case should be dismissed for failure to prosecute and

22     the default that was entered against La Guira Inc. will be

23     stricken and the matter may be terminated with the

24     exception that the Court will retain jurisdiction to

25     impose sanctions upon any of the lawyers who has

1    represented plaintiff in this case that is Optimum Law

2    Group, PC, Feinstein Law Office and/or to refer these --

3    well including the reference of this matter to the

4    disciplinary board for further action.  So, you have any

5    questions Mr. Torres?

6              MR. TORRES:  Yes.

7              THE COURT:  Yeah.

8              MR. TORRES:  Does that mean they can sue me

9    again?

10             THE COURT:  They could if they wanted to, they

11   could sue you again, yes.  But we'll see where that goes.

12             MR. TORRES:  Okay.

13             THE COURT:  Yeah.

14             MR. TORRES:  I was just asking because since it's

15   not my building, was the first time I was there --

16             THE COURT:  I understand that.

17             MR. TORRES:  And I was, like, a little bit

18   confused and.

19             THE COURT:  I asked him that question.

20             MR. TORRES:  So --

21             THE COURT:  So it -- I asked him that question

22   and I will ask put in the order that if you were to refile

23   the -- if they were to refile this case they should

24   provide some legal authority from the proposition that

25   under these circumstances the promoter will bear some

1    liability.  As you heard him, his explanation is that he

2    read statute but he didn't do any research that applied

3    the statute to the facts of this case.  Okay.  Very good.

4    Okay, thank you.

5            MR. TORRES:  Thank you.

6            THE COURT:  Hearing is adjourned.

7            MR. TORRES:  Happy holidays to everyone.

8            THE COURT:  Thank you.

9                (Court adjourned at 10:50 a.m.)

CERTIFICATE

I, Stephanie Garcia, court approved transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter.

January 6, 2020