UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF PENNSYLVANIA

```
EDUARDO ROSARIO,              :    CIVIL CASE
                              :
         Plaintiff(s)         :    Case No.  2:19-cv-02222-ER
                              :
    v.                        :    Philadelphia, Pennsylvania
                              :    December 20, 2019
ALEX TORRES PRODUCTIONS,      :    Time 10:28 a.m. to 10:50 a.m.
INC, et al                    :
                              :
         Defendant(s)         :
```

TRANSCRIPT OF PRETRIAL CONFERENCE
BEFORE THE HONORABLE EDUARDO C. ROBERENO
UNITED STATES DISTRICT COURT JUDGE

APPEARANCES:

For the Plaintiff(s):       Steven C. Feinstein
                            Feinstein Law Office
                            107 Wayne Court
                            West Chester, PA 19380

For Defendant Name:         Alex Torres, Pro Se
                            Alex Torres Productions, Inc
                            651 Weybridge Court
                            Lake Mary, FL 32746
                            City, State Zip

Court Recorder:             Kenneth Duvak
                            Clerk's Office
                            U.S. District Court

Transcription Service:      Precise Transcripts
                            45 N. Broad Street
                            Ridgewood, NJ 07450

Proceedings recorded by electronic sound recording; transcript produced by transcription service.

Exhibit "B"

1        (Proceedings started at 10:28 a.m.)

2        DEPUTY CLERK RONALD VANCE: All rise. The United States District Court for the Eastern District of Pennsylvania is now in session. The Honorable Eduardo C. Roberno presiding.

6        JUDGE EDUARDO C. ROBERNO: Good morning, please be seated.

8        ALEX TORRES: Good morning.

9        THE COURT: Okay. Is there anyone in the courtroom or on the phone on behalf of the plaintiff Rosario?

12       COUNSEL STEVEN FEINSTEIN: Your Honor this is Steve Feinstein. My appearance is entered for Mr. Rosario. When the complaint was filed in this case it was filed under the law firm of Optimum Law Group and on November 26th I left Optimum Law Group, I subsequently received a letter --

18       THE COURT: Hold - hold on a second. What's going on here Kenneth? There's - there's a phone ringing.

20       ESR KENNETH DUVAK: I think that's on his end Judge. I think that's a phone in his office ringing.

22       THE COURT: Oh okay. Is that a phone in your office Mr. Feinstein?

24       MR. FEINSTEIN: No, there's nothing ringing in my office.

3

```
 1                THE COURT:  Okay.
 2                MR. FEINSTEIN:  I do hear that but that not in my
 3   office.
 4                THE COURT:  Okay.  Okay, well let's proceed.
 5                MR. FEINSTEIN:  Your Honor, as I was saying.  I
 6   left Optimum Law Group on November 26th just before
 7   Thanksgiving and I received a letter from them indicating
 8   that I was not to communicate with any clients and not to
 9   do anything on behalf of any of their cases.  I instructed
10   them to substitute my appearance in on any of the cases
11   that -- substitute the appearance from anything that I
12   had.  I'd also received a - a part of the exchange of the
13   communications where -- that they were going to absolute
14   change my credentials, my lobbying credentials, to prevent
15   me from lobbying in.  So, the first thing I did after -
16   after I received that was go into all of the various
17   places where I could find --
18                THE COURT:  Now hold on a second.  There is a
19   ringing going on here.
20                MR. FEINSTEIN:  Okay.
21                ESR:  It's not coming in over there.
22                THE COURT:  Okay, let's - let's proceed.  Mr.
23   Fein-
24                MR. FEINSTEIN:  Yes, part of the communications
25   that I received from them was a (indiscernible) to change
```

4

all of my lobbying credentials on all of the electronic filing notifications and jurisdictions, so I immediately went in and changed my - my passwords and all the contact information which is why it - it's still - it -- when - when I did that it automatically updated my appearance on any case that I was in and changed it to Feinstein - Feinstein Law Office as opposed to Optimum Law Group. But if you pull up the complaint that was filed, you'll see that it was filed under Optimum Law Group. They did receive notice of this hearing and I had no explanation to why they didn't send someone over. I apologize to the Court because obviously if I had known they weren't going to I would've been there. They have been specifically instructed to substitute my appearance in every case in which I was involved in an Optimum case. And, I will immediately file a petition to have my formal appearance withdrawn and I will put Optimum on notice of what happened this morning and let them know that, you know, I'm not very happy about what they did, as I'm sure you are not as well. So, again my apologies to the Court, I did know about this hearing, I did but as I said they were - they were advised of the hearing as well and they should've sent somebody, so.

THE COURT: Now, let me ask you this. When did this event happen that you were dismissed from Optimum or

```
 1   terminated?
 2          MR. FEINSTEIN:  Well actually I resigned from
 3   them on October -- on November 26th.
 4          THE COURT:  November 26th.
 5          MR. FEINSTEIN:  I have --
 6          THE COURT:  Okay.
 7          MR. FEINSTEIN:  November 26th.  I've also just
 8   finished a two-week jury trial and this was, you know, my
 9   mind actually wasn't on, you know, my calendar but I have
10   been communicating with them because they owe me money and
11   they owe me information about cases that I - that I
12   retained and they have -- they just stopped communicating
13   with me and I asked them several times to substitute their
14   appearance send (indiscernible) for my appearance, but.
15          THE COURT:  Now, did you - did you - you drafted
16   the complaint in this case?
17          MR. FEINSTEIN:  I believe that I did.  Yeah, I
18   did.  As a matter of fact I did based upon a sample that
19   was provided to me by one of the paralegals at Optimum,
20   but yes, I did draft the complaint.
21          THE COURT:  Yeah, because it's signed by you.
22          MR. FEINSTEIN:  Yeah.
23          THE COURT:  And, there was - there was an issue
24   of whether this promoter was in Florida -- was properly
25   sued in this case and I'm looking to some law that would
```

1   allow that to - to take place. Was there any research
2   done here that would warrant suing a promoter an - an
3   artist who performed?
4           MR. FEINSTEIN: I - I personally did not do any
5   research with regard to that. The -- I believe that the
6   sample complaint that I had was a similar set of
7   circumstances and -- but the way I read the statute, when
8   I did read the provisions of the statute I - I did read it
9   to include that a promoter could be held responsible under
10  these circumstances. I - I did 'cause I remember - I
11  remember -- and this a long time ago through, gosh it was
12  several months, and I remember reading this and the way I
13  - I read it I - I thought that the statute was rather
14  extensive and included people who were running promotions
15  at the facility and that they were obligated to - to - to
16  provide access to - to handicap people.
17          THE COURT: Do you have any - any case law that
18  supports that interpretation?
19          MR. FEINSTEIN: No, I'm sorry do any specific
20  research with regard to that.
21          THE COURT: Mm-hm. Okay. Well, who is the
22  person at Optimum Law Group, who was the senior person
23  there?
24          MR. FEINSTEIN: Well the managing attorney is -
25  is a gentleman by the name of Joseph Lento.

```
 1                THE COURT:  Wisro?
 2                MR. FEINSTEIN:  Lento, L-E-N-T-O.
 3                THE COURT:  Okay, spell - spell it for us again.
 4                MR. FEINSTEIN:  L-E-N-T-O.
 5                THE COURT:  Oh, Lento.
 6                MR. FEINSTEIN:  I also (indiscernible) that he's
 7    not admitted in the Eastern District.
 8                THE COURT:  Okay.  Okay.  Well, this -- Mr.
 9    Feinstein, I - I hope to say a learning lesson.  When your
10    name is on the complaint until your relief from that
11    obligation, you are the lawyer of record.  You can't tell
12    --
13                MR. FEINSTEIN:  You're right sir, I was - I was
14    not careful, I should have taken care of that.
15                THE COURT:  Yeah.
16                MR. FEINSTEIN:  I apologize.
17                THE COURT:  Because you can't just tell somebody
18    else, you know, I'm out of here you take care of it and
19    rely upon that because we rely on the lawyer of record --
20                MR. FEINSTEIN:  Yes.
21                THE COURT:  We have - we have the defendant is
22    here today and he had been inconvenienced by having to
23    show up here when there's nobody here from the other side.
24    And that's --
25                MR. FEINSTEIN:  Well, like I said, I apologize to
```

```
 1   the Court and I apologize to Mr. Torres --
 2           THE COURT:  Yeah.
 3           MR. FEINSTEIN:  -- certainly no disrespect was
 4   intended.  I, you know, this was -- it is my
 5   responsibility because my appearance is entered, but I
 6   genuinely thought somebody would be covering it from
 7   Optimum --
 8           THE COURT:  Right.
 9           MR. FEINSTEIN:  -- and I will make sure that my
10   appearance is withdrawn, somebody else is subst-
11   substituted in.
12           THE COURT:  Yeah.  Well, I think the solution to
13   this problem is going to be that we're gonna start, if the
14   Plaintiff wants, all over again.  I'm gonna dismiss the
15   case without prejudice and --
16           MR. FEINSTEIN:  Okay.
17           THE COURT:  -- I'm going to strike - I'm gonna
18   strike the - the default and -- because no lawyer is
19   really representing the Plaintiff in this case --
20           MR. FEINSTEIN:  Okay.
21           THE COURT:  And somebody's gonna have to come up
22   with some cause of action that is supported by - by law.
23   You're handed representation that you didn't do any
24   research concerning bringing in a party to the case.  Is
25   from a (indiscernible) rule 11 sanctionable, but to the
```

```
 1   extent --
 2              MR. FEINSTEIN:  But not -- Your Honor, with all
 3   due respect, if I viewed the statute as being extensive, I
 4   had a good faith basis for - for including that.
 5              THE COURT:  No.  Okay, I - I didn't say it was, I
 6   said it was from a (indiscernible), okay, case.
 7              MR. FEINSTEIN:  Okay.  Okay.
 8              THE COURT:  You don't have an explanation for it.
 9   So I don't know whether anybody's interested in pursuing
10   this matter but I think that this is something that is
11   troublesome -- now is Optimum Law have any other lawyers
12   other than Mr. Lento?
13              MR. FEINSTEIN:  I'm sorry what, I could
14   understand --
15              THE COURT:  Yeah.  Are there any other lawyers in
16   Optimum Law other than Mr. Lento?
17              MR. FEINSTEIN:  Yes, there are several.
18              THE COURT:  Okay.
19              MR. FEINSTEIN:  But it's sort of a decentralized
20   law firm and people -- it's really kind of a
21   (indiscernible) who are operating under one letterhead --
22              THE COURT:  I - I see.
23              MR. FEINSTEIN:  But they're -- so they're
24   individual counsels, it's not a traditional type law firm
25   --
```

1        THE COURT: Okay.
2        MR. FEINSTEIN: -- where - where you go to a
3   central location and -- we're all remote - remote people,
4   well we were, but.
5        THE COURT: Now, 1615 South Broad, is that where
6   -- let me see, you know, they're - they're located on 1500
7   Market Street.
8        MR. FEINSTEIN: Yeah, that - that - that is a
9   virtual office. The primary - the primary office is
10  located in New Jersey.
11       THE COURT: Yeah.
12       MR. FEINSTEIN: That's a virtual office, I - I --
13  the 1615 address, I'm not sure why it would've been in the
14  complaint but that's law office of (indiscernible) Conrad
15  Benedetto.
16       THE COURT: Yeah, right.
17       MR. FEINSTEIN: Not a member of Optimum but who
18  had - who probably drafted the original complaint that was
19  given to me as a sample. I -- if that address appears in
20  the complaint it's probably a (indiscernible) error of
21  some kind but I'm not sure since I don't have the
22  complaint in front of me.
23       THE COURT: Well let's see, the complaint says
24  1500 Market Street and is - is signed by you.
25       MR. FEINSTEIN: Yes.

1         THE COURT: In - in there Mr. Benedetto's name is
2 on the docket but is says he was terminated as of July 1,
3 2019.
4         MR. FEINSTEIN: Oh, you know what, that -- he just
5 told me that.
6         THE COURT: Yeah.
7         MR. FEINSTEIN: Is my -- the first time I've
8 heard that.
9         THE COURT: Yeah.
10         MR. FEINSTEIN: Mr. Benedetto refers cases to
11 Optimum. I was given it to draft a complaint and - and -
12 and - and to file suit in the case. I had no idea that
13 the case had actually originated with Conrad or that maybe
14 he had (indiscernible) 'cause when I filed it, I filed it
15 as an original lawsuit with all the original cover sheets.
16 There -- I don't have any idea why Conrad would've been on
17 the docket. Do you want - do you want the -- the
18 telephone number that's on the complaint is -- I do
19 believe that holds through to (indiscernible) so --
20         THE COURT: Let's see - let's see what it says
21 here, I think it has a 50 -- he has 267, which I guess is
22 Philadelphia extensively, 833-0200.
23         MR. FEINSTEIN: Yes, got it. That went through
24 to the New Jersey office.
25         THE COURT: Now, have you ever met Mr. Rosario?

1       MR. FEINSTEIN:  Have I met Mr.  -- I have not
2  personally met Mr. Rosario.
3       THE COURT:  Okay.  Okay.  Well --
4       MR. FEINSTEIN:  The - the file's reviewed by
5  others in Optimum --
6       THE COURT:  Yeah.
7       MR. FEINSTEIN:  -- and I was requested to file
8  the complaint.
9       THE COURT:  Yep.  Okay, we are putting your -
10 your name on it and - and you will have -- you have a
11 license to protect so how long have you been practicing
12 law?
13      MR. FEINSTEIN:  Thirty-four years Your Honor.
14      THE COURT:  Okay, so I think you - you know
15 better Mr. Feinstein.  This is -- your whole story, which
16 I appreciate by the way, your candor, is very troubling.
17      MR. FEINSTEIN:  All -- I understand Your Honor,
18 it's one of the reasons why I'm no longer with Optimum.
19      THE COURT:  Yeah.
20      MR. FEINSTEIN:  I had significant concerns about
21 the - some of the ethical things that were going on in
22 that firm and there were other issues that - that were --
23 you know, I don't really want to get into it but there are
24 very significant and specific reasons why I'm no longer
25 with that firm.  I, you know, and I'll be fully candid, I

```
 1   graduated in - in '85', I - I previously had some -- a run
 2   in with the disciplinary board and I've been doing
 3   everything I possibly can to avoid every having to do that
 4   again.  So, I do appreciate and understand everything that
 5   you're saying and that's part of the reason why I'm no
 6   longer with Optimum because I felt at various times that
 7   my license might be at risk based upon things that they
 8   were doing.  So -- and again, I wasn't with them all that
 9   long.  I started with them in, I think April, and it
10   terminated in November because I just didn't like the way
11   things were going down.  But, in the meantime I do -- I
12   just said -- I do appreciate your comments and I'm taking
13   them to heart and nothing like this will ever happen
14   again.
15           THE COURT:  And you are in West Chester now,
16   right?
17           MR. FEINSTEIN:  Yeah, my office is - my personal
18   office in West Chester, yeah.  But actually you're talking
19   to me on my cell phone so I'm not sitting --
20           THE COURT:  Okay.
21           MR. FEINSTEIN:  -- there right now, but that's
22   where my office is.
23           THE COURT:  At 107 Wayne Court, West Chester,
24   Pennsylvania?
25           MR. FEINSTEIN:  Yes.
```

```
 1            THE COURT:  Okay.  Very good.  I think we're
 2   going to terminate then your participation in this, I said
 3   is my intend then to dismiss the case and strike the
 4   default and --
 5            MR. FEINSTEIN:  Okay.
 6            THE COURT:  -- allow you to also -- I'm going to
 7   allow you to withdraw from the case.
 8            MR. FEINSTEIN:  Okay.
 9            THE COURT:  But in the way out of withdrawal you
10   are to serve the copy of the order that I entered in the
11   case upon the Optimum Law Group, PC. and --
12            MR. FEINSTEIN:  I'll - I'll - I'll file - I'll
13   file a copy -- I'll serve them with a copy of my petition
14   and I'll serve them with any order.
15            THE COURT:  And also the extent that you know Mr.
16   Rosario's address, do you know that?
17            MR. FEINSTEIN:  Let me see if I have that.  Hold
18   on.  I have it as 2940 A Waldorf Avenue, Camden, New
19   Jersey.
20            THE COURT:  Okay.  So, you are directed by the
21   Court to serve Mr. Rosario as well as Optimum Law Group,
22   PC --
23            MR. FEINSTEIN:  Okay.
24            THE COURT:  -- with a copy of the order that I'm
25   going to enter in this case --
```

```
 1              MR. FEINSTEIN:  Okay.
 2              THE COURT:  -- and then they'll - they'll have to
 3   proceed which ever way they - they would like to.  Okay,
 4   thank you Mr. Feinstein.
 5              MR. FEINSTEIN:  So -- okay, thank Your Honor I
 6   appreciate it.
 7              THE COURT:  Thank you.
 8              MR. FEINSTEIN:  Thank you.
 9              THE COURT:  Thank you.  Okay, good morning.  Sir,
10   would I have your name?
11              MR. TORRES:  Alex Torres.
12              THE COURT:  Okay.  Mr. Torres, let's see, you are
13   the promoter for this --
14              MR. TORRES:  Yes, sir.
15              THE COURT:  Okay.
16              MR. TORRES:  Yes, Your Honor.
17              THE COURT:  Now - now you're from Florida?
18              MR. TORRES:  Yes.
19              THE COURT:  Okay, so you came up for this matter?
20              MR. TORRES:  I drove, I've been driving for two
21   days.
22              THE COURT:  Okay.  Well, what about the - the
23   other defendant has - has the other defendant been served?
24   La Guira?
25              MR. TORRES:  Huh?
```

```
 1          THE COURT:  Right.  Well no it says here default
 2   against La Guira.  Okay, that was entered, right?  Okay.
 3   Okay.  Well -- but the hearing today was on -- okay Mr.
 4   Torres file and answer, La Guira has not appeared, right?
 5   Okay.  Okay.  Well, this is what we're going to do, we're
 6   gonna dismiss the case and we'll see where that goes from
 7   there.  I think what you should do Mr. Torres, is leave
 8   your phone number --
 9          MR. TORRES:  Okay.
10          THE COURT:  -- so that if we have further
11   proceeding you may not necessarily have to come from
12   Florida.
13          MR. TORRES:  Thank you.
14          THE COURT:  I think it's been a burden on you
15   that is - is - is - is unfair burden on you to have you -
16   have you drive up here and then there is no one here from
17   the plaintiff's side.  So, let me -- let's - let's go off
18   the record here for a moment.  The Court finds after
19   hearing from counsel for the plaintiff in this case and
20   hearing from defendant Alex Torres Production, Inc. that
21   the case should be dismissed for failure to prosecute and
22   the default that was entered against La Guira Inc. will be
23   stricken and the matter may be terminated with the
24   exception that the Court will retain jurisdiction to
25   impose sanctions upon any of the lawyers who has
```

```
 1   represented plaintiff in this case that is Optimum Law
 2   Group, PC, Feinstein Law Office and/or to refer these --
 3   well including the reference of this matter to the
 4   disciplinary board for further action.  So, you have any
 5   questions Mr. Torres?
 6           MR. TORRES:  Yes.
 7           THE COURT:  Yeah.
 8           MR. TORRES:  Does that mean they can sue me
 9   again?
10           THE COURT:  They could if they wanted to, they
11   could sue you again, yes.  But we'll see where that goes.
12           MR. TORRES:  Okay.
13           THE COURT:  Yeah.
14           MR. TORRES:  I was just asking because since it's
15   not my building, was the first time I was there --
16           THE COURT:  I understand that.
17           MR. TORRES:  And I was, like, a little bit
18   confused and.
19           THE COURT:  I asked him that question.
20           MR. TORRES:  So --
21           THE COURT:  So it -- I asked him that question
22   and I will ask put in the order that if you were to refile
23   the -- if they were to refile this case they should
24   provide some legal authority from the proposition that
25   under these circumstances the promoter will bear some
```

```
1    liability.  As you heard him, his explanation is that he
2    read statute but he didn't do any research that applied
3    the statute to the facts of this case.  Okay.  Very good.
4    Okay, thank you.
5              MR. TORRES:  Thank you.
6              THE COURT:  Hearing is adjourned.
7              MR. TORRES:  Happy holidays to everyone.
8              THE COURT:  Thank you.
9                   (Court adjourned at 10:50 a.m.)
```

CERTIFICATE

I, Stephanie Garcia, court approved transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter.

January 6, 2020