IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Eduardo Rosario,<br><br>Plaintiff<br>v.<br><br>Alex Torres Productions, Inc., et al.,<br><br>Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | CIVIL ACTION<br>NO. 19-2222 |

**ORDER**

**AND NOW**, this **11th** day of **February, 2020**, after considering Steven C. Feinstein's Response to the Rule to Show Cause (ECF No. 12) and Joseph D. Lento's Response to the Rule to Show Cause (ECF No. 14) it is hereby **ORDERED** that:

1. Appearing that Steven C. Feinstein, Esq., Joseph D. Lento, Esq., and Lento Law Group, previously known as Optimum Law Group, P.C., are providing legal services in the Commonwealth of Pennsylvania and that Steven C. Feinstein and Joseph D. Lento are licensed to practice law in the Commonwealth of Pennsylvania;
2. Appearing that Joseph D. Lento has supervisory or managerial authority over Lento Law Group;

3. Appearing that a lawsuit was filed in this Court by Steven C. Feinstein and Lento Law Group without research or investigation; and
4. Appearing that the conduct of Steven C. Feinstein and Joseph D. Lento may constitute a violation of Pennsylvania Rules of Professional Conduct Rule 1.1, 1.2, 1.3, 1.4, 1.16, 3.1, 3.3, 3.4, 4.1, 4.2, or 5.1;
5. Steven C. Feinstein and Joseph D. Lento are **REFERRED** to the Disciplinary Board of the Supreme Court of Pennsylvania;[1]
6. The Rule to Show Cause (ECF No. 9) is **DISSOLVED;**
7. The Clerk is directed to mail a copy of this Order and all attachments to The Disciplinary Board of the Supreme Court of Pennsylvania, District 1 Office, 1601 Market Street, Suite 3320, Philadelphia, PA 19103; and
8. The Clerk is directed to mail a copy of this Order and all attachments to Steven C. Feinstein, 107 Wayne Court, West Chester, PA 19380, and Joseph D.

[1] Greenfield v. U.S. Healthcare, Inc., 146 F.R.D. 118, 128 (E.D. Pa. 1993) ("Since this court has adopted the Rules of Professional Conduct adopted by the Supreme Court of Pennsylvania, when misconduct or allegations of misconduct come to the attention of a Judge of this court, it is customary for the Judge to refer the matter to the Disciplinary Board of the Supreme Court of Pennsylvania ('Disciplinary Board') for investigation and, if necessary, for the prosecution of a formal disciplinary proceeding."), aff'd sub nom. Garr v. U.S. Healthcare, Inc., 22 F.3d 1274 (3d Cir. 1994).

Lento, 1500 Walnut Street, Suite 500, Philadelphia, PA 19102.

**AND IT IS SO ORDERED.**[2]

***/s/ Eduardo C. Robreno***
**EDUARDO C. ROBRENO, J.**

[2] Attached to this Order are (1) the Complaint, (2) the Transcript of the Pretrial Conference, (3) Steven C. Feinstein's Response to the Rule to Show Cause, and (4) Joseph D. Lento's Response to the Rule to Show Cause.

ER

IN THE UNITED STATES COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EDUARDO ROSARIO | : | CIVIL NO. 19 2222 |
| v. | : | |
| ALEX TORRES PRODUCTIONS, INC. | : | |
| and | : | |
| LA GUIRA, INC. d/b/a RED WINE RESTAURANT | : | DEMAND FOR JURY TRIAL |

## COMPLAINT-CIVIL CASE

**NOW COMES THE PLAINTIFF** and prays, alleges and states as follow.

## PARTIES

1. Plaintiff, Eduardo Rosario is an adult individual, who at all times relevant hereto is paraplegic who requires the use of a wheelchair at all times for mobility and who resides at 2940 A. Waldorf Avenue, Camden, New Jersey.

2. Defendant, Alex Torres Productions, Inc., is a foreign corporation or other business entity, authorized to do business in the Commonwealth of Pennsylvania, having its principle place of business located at 651 Weybridge Court, Lake Mary, Fl, 32746. ("Torres")

3. Defendant, La Guira, Inc. is a corporation or other business entity, organized and existing pursuant to the laws of the Commonwealth of Pennsylvania, which does business as the Red Wine Restaurant, having its principle place of business at 701 Adams Avenue, Philadelphia PA 19124. ("Red Wine")

Case 2:19-cv-02222-ER Document 1 Filed 05/21/19 Page 5 of 14

## JURISDICTION AND VENUE

4. This Court has jurisdiction pursuant to 42 U.S.C. §12101 et. seq. because the instant case arises under federal law, specifically under the American with Disabilities Act as amended, Subchapter III, § 12182. (42 USC 12182), and its implementing regulations under 28 C.F.R. § 36.101 et seq. Also, the Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 for civil actions arising under the laws of the United States; and for actions under laws providing for the protection of civil rights as per 28 U.S.C. § 1343. On this matter, the Court has supplemental jurisdiction over claims based in Pennsylvania State Law as stated in 28 U.S.C. § 1367. Declaratory and injunctive relief is also pursued under 28 U.S.C. §§ 2201 and 2202. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) as the Eastern District is the judicial district in which a substantial portion of the events or omissions giving rise to the claims alleged herein occurred. Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all triable matters of the instant case.

## FACTUAL ALLEGATIONS

5. At all times relevant hereto, Defendant, Red Wine, owned, controlled and/or was exclusively responsible for the maintenance and condition of a facility which is open to the public known as the Red Win Restaurant, located at 701 Adams Avenue, Philadelphia PA 19124. ("Red Wine")

6. Defendant, Red Wine offered the use of its location to performers to provide entertainment services to its customers.

7. Customers who which to attend the performances were required to pay an admission fee.

8.      At all times relevant hereto Defendant, Torres, was a promoter who provided entertainers and/or performers to businesses such as Defendant, Red Wine.

9.      Upon information and belief, Defendant, Red Wine, hired Defendant, Torres to promote a comedy show to take place at the Red Wine Restaurant on February 10, 2019.

10.      Defendant, Torres was responsible to ensure that accommodations for the show were compliant with the Americans with Disabilities Act of 1990, as amended 42 USC, Chapter 126, 12101 et. seq., ("ADA") and the local equivalency thereof.

11.      Plaintiff purchased a ticket to the comedy show after confirming that the Red Wine Restaurant was accessible to person in a wheelchair.

12.      On February 10, 2019, Plaintiff, a resident of New Jersey was denied participation and/or use of the facilities under the control and management of Defendants, because said facilities were neither fully accessible and/or independently usable to people who ride wheelchairs, to wit, the comedy show was on a lower floor which was only accessible by stairs.

13.      The Red Wine Restaurant is a place of public accommodation under the meaning of the ADA, as per 42 USC 12181(7)(A) Plaintiff has a mobility disability that substantially limits one or more of his major life activities, including walking and climbing stair and thus is disabled under the meaning and pursuant to the ADA

14.      Plaintiff, who requires a wheelchair at all times, was unable to access the lower floor, where rooms and amenities under control of Defendants, are located.

15.      A guest elevator was not available and alternatives for access were not offered, although Plaintiff was assured that the facility was wheelchair accessible.

16.      Plaintiff suffered denial of equal services and access as compared to other venue guests not having a mobility disability, humiliation resulting from being singled out as a person

with a disability and the inconvenience of having the added inconvenience being unable to attend the advertised show.

17. The lower floors of the Red Wine lack minimum accessibility requirements under the ADA and its interpreting rules and regulations, as contained in the Code of Federal Regulations.

18. A public accommodation shall make reasonable modifications in, practices, or procedures when the modifications are necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities. 42 U.S.C. §12182(b)(2)(A)(ii); 28 C.F.R. §36.302(a). The defendant discriminated against the plaintiff based upon the plaintiff's disability by (a) failing to make a requested reasonable modification that was (b) necessary to accommodate the plaintiff's disability.

19. Lack of access and denial of participation and "...full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation..." to Plaintiff is exclusively due to Defendants' failure to observance, of among other statutes, ADA's minimum accessibility requirements for commercial facilities, more specifically Section 12182 et. seq. of ADA, as amended, which prays as follows:

"Prohibition of discrimination by public accommodations

(a) General rule
No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.
(b) Construction
(1) General prohibition
(A) Activities
(i) Denial of participation
It shall be discriminatory to subject an individual or class of individuals on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements, to a denial of the

opportunity of the individual or class to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity.

(ii)     Participation in unequal benefit

It shall be discriminatory to afford an individual or class of individuals, on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals.

(iii)    Separate benefit

It shall be discriminatory to provide an individual or class of individuals, on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements with a good, service, facility, privilege, advantage, or accommodation that is different or separate from that provided to other individuals, unless such action is necessary to provide the individual or class of individuals with a good, service, facility, privilege, advantage, or accommodation, or other opportunity that is as effective as that provided to others.

(iv)    Individual or class of individuals

For purposes of clauses (i) through (iii) of this subparagraph, the term "individual or class of individuals" refers to the clients or customers of the covered public accommodation that enters into the contractual, licensing or other arrangement.

(B) Integrated settings

Goods, services, facilities, privileges, advantages, and accommodations shall be afforded to an individual with a disability in the most integrated setting appropriate to the needs of the individual.

(C) Opportunity to participate

Notwithstanding the existence of separate or different programs or activities provided in accordance with this section, an individual with a disability shall not be denied the opportunity to participate in such programs or activities that are not separate or different."

20.     The ADA, as amended, was enacted on July 26, 1990. It was at the time the first

comprehensive federal civil rights law prohibiting discrimination due to a disability. The statute is

meant to protect the rights of individuals with disabilities in the areas of employment, access to both State and local government services, as well as places of public accommodation and transportation.

21.    "In enacting the ADA, Congress adopted two distinct systems for regulating building accessibility: one to apply to existing facilities (those designed and constructed for occupancy before January 26, 1993) and another to apply to later-constructed facilities. 42 U.S.C. §§ 12183(a)(1) and 12182(b)(2)(A)(iv).

22.    The grandfathered facilities must remove barriers to access only to the extent that such removal is "readily achievable." 42 U.S.C. § 12182(b)(2)(A)(iv). "Readily achievable" is defined as "easily accomplishable and able to be carried out without much difficulty or expense." 42 U.S.C. § 12181(9)." See Long v. Coast Resorts, Inc., 267 F.3d 918.

23.    Title III of the former, requires places that provide public accommodation to comply with ADA standards and to be readily accessible to, and usable by, individuals with disabilities, as per 42 U.S.C. §§ 12181-89.

24.    Defendants are required by the ADA to remove existing architectural barriers when such removal is readily achievable for places of public accommodation that were built prior to January 26, 1992, according to and 42 U.S.C. § 12182(b)(2)(A)(iv), and its rules and regulations under 28 C.F.R. § 36.304(a).

25.    The ADA lists factors for determining whether a measure is "readily achievable", looking at the difficulty and expense of the measure as balanced against the resources available to the covered entity. These factors are:

- the nature and cost of the action needed under the (ADA);

- the overall financial resources of the facility or facilities involved in the action;

Case 2:19-cv-02222-ER Document 1 Filed 05/20/19 Page 7 of 14

- the number of persons employed at such facility;
- the effect on expenses and resources or the impact otherwise of such action upon the operation of the facility;
- the overall financial resources of the covered entity, the overall size of the business of a covered entity with respect to the number of its employees; the number, type, and location of its facilities; and
- the type of operation or operations of the covered entity, including the composition, structure, and functions of the workforce of such entity; the geographic separateness, administrative or fiscal relationship of the facility or facilities in question to the covered entity. (42 § U.S.C. 12181(9); 28 C.F.R. § 36.304). "Plaintiff bears the initial burden of production to present evidence that a suggested method of barrier removal is readily achievable, i.e., can be accomplished easily and without much difficulty or expense. If Plaintiff satisfies this burden, Defendant then has the opportunity to rebut that showing. Defendant bears the ultimate burden of persuasion regarding its affirmative defense that a suggested method of barrier removal is not readily achievable." Colorado Cross Disability Coalition v. Hermanson Family Ltd. Partnership I, 264 F.3d 999. Architectural barrier removal should comply with ADAAG to the extent of being readily achievable. 28 C.F.R. §36.304(d)(1); ADA Technical Assistance Manual III-4.4300: Pickern v. Best Western Timber Cove Lodge Marina Resort, 2002 WL 202442. See also D'Lil v. Stardust Vacation Club, 2001 WL 1825832 (finding ADAAG "valuable guidance" even with respect to existing facilities)

26. In accordance with the aforementioned, If there has been alteration to Defendants' facilities since January 26, 1992, Defendants are then required to ensure to the maximum extent feasible, that the altered portions of the facilities are readily accessible to, and usable by individuals with disabilities, including individuals who use wheelchairs, as per 28 C.F.R. § 36.402.

27. Alternatively, If the Defendants' facilities were designed and constructed after January 26, 1992, as defined in 28 C.F.R. § 36.401, then the Defendants' facilities must be readily accessible to and usable by individuals with disabilities as defined by the ADA.

28. Architectural barriers removal could be readily achieved, and access easily provided if Defendant executes simple alterations to the facilities such as elevators, commercial vertical platform wheelchair lifts, inclined wheelchair stair lifts, regular inclined ramps and the proper placement of bathroom fixtures in the guest rooms.

29. All disabled Pennsylvanians are entitled to full and equal accommodation, advantages, facilities, and privileges of any place of public accommodation under the Pennsylvania Human Relations Act, 43 P. S. § § 951—963.

30. Last but not least, the law mandates that owners of places of public accommodations remove architectural barriers to ensure that individuals with disabilities are not excluded because of their reliance on a mobility device, as per The Pennsylvania Human Relations Act and applicable code provisions.

31. Thus, the ADA and Pennsylvania Law impose on the Defendants a mandatory requirement for places of public accommodation accessible to disabled individuals.

**FIRST CAUSE OF ACTION**
**VIOLATION OF THE AMERICAN WITH DISABILITIES ACT**

32. All prior allegations are herein re-alleged and incorporated into this cause of action.

Case 2:19-cv-02222-ER Document 1 Filed 05/20/19 Page 9 of 14

33. Plaintiff possesses a qualified disability under the meaning of the ADA, to wit, a mobility-related disability that requires the use of a wheelchair at all times. See 42 U.S.C.§ 12131(2).

34. Title III of the American with Disabilities Act, as amended, mandates that persons with disabilities are entitled to equal access to places of public accommodation. Failure to provide said access is considered to be discrimination under the meaning of the law.

35. Compliance with Title III of the ADA means that public accommodation facilities must be readily accessible to, and independently usable by, disabled persons. 42 U.S.C. §§ 12181-89 Accessibility standards are specified and codified under 28 C.F.R. § Pt. 36.

36. Red Wine is a place of public accommodation as per 42 U.S.C. § 12181(7)(E).

37. Defendant has failed to remove architectural barriers and/or alter its facilities in order to make them readily accessible to people with disabilities according to 42 U.S.C. § 12183(a)(1).

38. Defendants have discriminated against plaintiffs by failing to provide a full and equal opportunity to enjoy the services Defendants provide, as per 42 U.S.C. §§ 12182, 12183(a)(1). 23. Defendants inobservance of the law is ongoing and continuous, requiring declaratory and injunctive relief appropriate by means of 42 U.S.C. § 12182, as well as Fed. R. Civ. P. 57, and 28 U.S.C. § 2201.

**SECOND CAUSE OF ACTION**
**VIOLATION OF THE PENNSYLVANIA**
**HUMAN RELATIONS ACT, 43 P. S. § § 951—963**

39. All prior allegations are herein re-alleged and incorporated into this cause of action.

40. The Pennsylvania Human Relations Act, is comprised of the Pennsylvania Human Relations Act, 43 P. S. § § 951—963 (which provides the substance of the law) and Chapter 44 of the Pennsylvania Code, "Discrimination On The Basis Of Handicap Or Disability". ("PHRA")

41. In general, disability discrimination claims under the PHRA rise or fall in tandem with disability discrimination claims brought pursuant to the federal ADA.

42. Defendants are subject to PHRA because the Red Wine Restaurant is a place of public accommodation as defined by this statute, as well as the ADA.

43. The PHRA reads:

> The opportunity for an individual to obtain employment for which he is qualified, and to obtain all the accommodations, advantages, facilities and privileges of any public accommodation and of any housing accommodation and commercial property without discrimination because of race, color, familial status, religious creed, ancestry, handicap or disability, age, sex, national origin, the use of a guide or support animal because of the blindness, deafness or physical handicap of the user or because the user is a handler or trainer of support or guide animals is hereby recognized as and declared to be a civil right which shall be enforceable as set forth in this act.

44. The law's definition of "public accommodation" includes

> accommodation, resort or amusement which is open to, accepts or solicits the patronage of the general public, including but not limited to inns, taverns, roadhouses, hotels, motels, whether conducted for the entertainment of transient guests or for the accommodation of those seeking health, recreation or rest, or restaurants or eating houses, or any place where food is sold for consumption on the premises, buffets, saloons, barrooms or any store, park or enclosure where spirituous or malt liquors are sold, ice cream parlors, confectioneries, soda fountains and all stores where ice cream, ice and fruit preparations or their derivatives, or where beverages of any kind are retailed for consumption on the premises, drug stores, dispensaries, clinics, hospitals, bathhouses, swimming pools, barber shops, beauty parlors, retail stores and establishments, theaters, motion picture houses, airdromes, roof gardens, music halls, race courses, skating rinks, amusement and recreation parks, fairs, bowling alleys, gymnasiums, shooting galleries, billiard and pool parlors, public libraries, kindergartens, primary and secondary schools, high schools, academies, colleges and universities, extension courses and all educational institutions under the supervision of this Commonwealth, nonsectarian cemeteries, garages and all public conveyances operated on land or water or in the air as well as the stations, terminals and airports

> thereof, financial institutions and all Commonwealth facilities and services, including such facilities and services of all political subdivisions thereof, but shall not include any accommodations which are in their nature distinctly private.

45. The statute makes it illegal for any person in the position of either Defendants to with refuse withhold or deny any of the accommodations, advantages, facilities or privileges of such public accommodation, resort or amusement on the basis of a disability.

46. Plaintiff is an individual with disabilities within the definition set forth by the PHRA. As such, he is an individual with a physical impairment, that prevents the exercise of walking, a normal bodily function.

47. The PHRA makes it unlawful for an owner of a place of public accommodation to deny an individual with a disability, directly or indirectly, any of the advantages, facilities, or privileges of such a place of public accommodation. Defendants have failed to remove architectural barriers in Red Wine.

48. Prior allegations in the present instance case, are also alleged herein as they are related to the human rights violations under PHRA forming the basis of this cause of action, case and controversy.

49. Discrimination takes place once an owner of a public accommodation facility refuses to remove architectural barriers present at said facility, or refusal to take steps necessary to ensure that a disabled person that uses a mobility device is not excluded or denied services at places of public accommodation. Again, Defendant in the instant case has failed to remove architectural barriers, contrary to the PHRA.

50. According to the PHRA all persons in the Commonwealth of Pennsylvania are entitled to full and equal accommodations, advantages, facilities and privileges of any place of public accommodation unless limited otherwise by law.

51.     Plaintiff is entitled to protection and remedies under PHRA as any other person in the Commonwealth of Pennsylvania; to wit, full and equal accommodations, advantages, facilities and privileges of any place of public accommodation.

52.     It is unlawful to discriminate against a person based on a disability, under PHRA. Defendants have incurred in violation of Pennsylvania Law by discriminating against Plaintiff by operating a facility that does not provide full and equal privileges to people with disabilities who rely on devices like wheelchairs for mobility.

53.     Defendants' failure to observe the law is ongoing and continuous, requiring declaratory and injunctive relief appropriate by means of PHRA as well as per the ADA and its implementing regulations.

54.     Defendants' failure to observance of the law is ongoing and continuous, requiring declaratory and injunctive relief appropriate by means of PHRA as well as Fed. R. Civ. P. 57, and 28 U.S.C. § 2201 as well as per the ADA and its implementing regulations.

55.     Plaintiff alleges and affirms:

1) He has suffered a personalized and concrete injury-in-fact of a legally cognizable interest; that is, Plaintiff was denied by Defendants of access and participation of; and the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations provided by Red Wine, as guaranteed under Federal Law and State Law

2) The Plaintiff's injury is traceable to the Defendants' conduct, as denial of participation and equal access to services is exclusively due to Defendants' lack of implementation of removal of architectural barrier and accessibility design implementation for the benefit of people with disabilities, again as mandated by State and Federal Law (3) It is likely, as opposed to speculative, that a favorable court decision will redress the plaintiff's injury, as injunctive relief

provided by the Court on its day, will provide for the removal of architectural barriers present that impede the provision of equal access and services to Plaintiff at the facilities of Red Wine, which effectively resolves the legal issue in this instance case.

RELIEF REQUESTED

The Plaintiff again demands trial by jury on all issues of the instant case, pursuant to Rule 38 of the Federal Rules of Civil Procedure; and that the Court provides:

a. Declaratory Judgement against Defendants based on a violation of the Americans with Disabilities Act, by means of remedies enforced through 42 U.S.C. §12188(a)(1); Pennsylvania Human Relations Act and title 44 of the Pennsylvania Code, because the Defendants' facilities as described above are inaccessible to, and not independently usable by, individuals with disabilities who use devices for purposes of mobility;

b. A Permanent Injunction pursuant to 42 U.S.C. § 12188(a)(2) and 28 C.F.R. § 36.504(a) enjoining the Defendant from further discriminating against disabled persons, and requiring Defendant to remove architectural barriers present at the Red Wine Restaurant by all means necessary to bring said facilities into compliance with the ADA, its rules and regulations, so access is always provided to disabled individuals with mobility issues, now and from on henceforth.

c. Damages, in an amount to be determined by this Court;

d. Reasonable attorney's fees and costs of suit; and

Case 2:19-cv-02222-ER Document 1 Filed 05/20/19 Page 14 of 14

e. Any other relief as this Court sees fit to provide to resolve the issues in the instant case.

**RESPECTFULLY,**

**OPTIMUM LAW GROUP, P.C.**

BY:___________________________

STEVEN C. FEINSTEIN, ESQUIRE
Optimum Law Group, P.C.
1500 Market Street, 12th Floor, East Tower
Philadelphia, Pennsylvania 19102
267-833-0200
scfeinstein@optimumlawgroup.com
Attorney for Plaintiff

Dated: May 8, 2019



JS 44 (Rev 06/17)

# CIVIL COVER SHEET

19-2222

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

**I. (a) PLAINTIFFS**
Eduardo Rosario

**DEFENDANTS** 19 2222
Alex Torres Production, Inc., and La Guira, Inc

(b) County of Residence of First Listed Plaintiff Camden, NJ
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant Seminole, FL
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

(c) Attorneys *(Firm Name, Address, and Telephone Number)*

Attorneys *(If Known)*

**II. BASIS OF JURISDICTION** *(Place an "X" in One Box Only)*

☐ 1 U.S. Government Plaintiff
☒ 3 Federal Question *(U.S. Government Not a Party)*
☐ 2 U.S. Government Defendant
☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

**III. CITIZENSHIP OF PRINCIPAL PARTIES** *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* *(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

**CONTRACT**
☐ 110 Insurance
☐ 120 Marine
☐ 130 Miller Act
☐ 140 Negotiable Instrument
☐ 150 Recovery of Overpayment & Enforcement of Judgment
☐ 151 Medicare Act
☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)
☐ 153 Recovery of Overpayment of Veteran's Benefits
☐ 160 Stockholders' Suits
☐ 190 Other Contract
☐ 195 Contract Product Liability
☐ 196 Franchise

**REAL PROPERTY**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**TORTS**

PERSONAL INJURY
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers' Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Personal Injury - Medical Malpractice

PERSONAL INJURY
☐ 365 Personal Injury - Product Liability
☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability
☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**CIVIL RIGHTS**
☐ 440 Other Civil Rights
☐ 441 Voting
☐ 442 Employment
☐ 443 Housing/ Accommodations
☐ 445 Amer. w/Disabilities - Employment
☒ 446 Amer w/Disabilities - Other
☐ 448 Education

**PRISONER PETITIONS**
Habeas Corpus:
☐ 463 Alien Detainee
☐ 510 Motions to Vacate Sentence
☐ 530 General
☐ 535 Death Penalty
Other:
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition
☐ 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 690 Other

**LABOR**
☐ 710 Fair Labor Standards Act
☐ 720 Labor/Management Relations
☐ 740 Railway Labor Act
☐ 751 Family and Medical Leave Act
☐ 790 Other Labor Litigation
☐ 791 Employee Retirement Income Security Act

**IMMIGRATION**
☐ 462 Naturalization Application
☐ 465 Other Immigration Actions

**BANKRUPTCY**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
☐ 820 Copyrights
☐ 830 Patent
☐ 835 Patent - Abbreviated New Drug Application
☐ 840 Trademark

**SOCIAL SECURITY**
☐ 861 HIA (1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g))
☐ 864 SSID Title XVI
☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
☐ 870 Taxes (U S. Plaintiff or Defendant)
☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
☐ 375 False Claims Act
☐ 376 Qui Tam (31 USC 3729(a))
☐ 400 State Reapportionment
☐ 410 Antitrust
☐ 430 Banks and Banking
☐ 450 Commerce
☐ 460 Deportation
☐ 470 Racketeer Influenced and Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Sat TV
☐ 850 Securities/Commodities/ Exchange
☐ 890 Other Statutory Actions
☐ 891 Agricultural Acts
☐ 893 Environmental Matters
☐ 895 Freedom of Information Act
☐ 896 Arbitration
☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision
☐ 950 Constitutionality of State Statutes

**V. ORIGIN** *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from Another District *(specify)*
☐ 6 Multidistrict Litigation - Transfer
☐ 8 Multidistrict Litigation - Direct File

**VI. CAUSE OF ACTION**
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Americans with Disabilities Act
Brief description of cause:
Plaintiff was denied access to a comedy show because of his disability

**VII. REQUESTED IN COMPLAINT:**
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☒ No

**VIII. RELATED CASE(S) IF ANY** *(See instructions)*
JUDGE
DOCKET NUMBER

MAY 20 2019

DATE 5-16-19
SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # AMOUNT APPLYING IFP JUDGE MAG. JUDGE

MAY 20 2019

JS 44 Reverse (Rev 06/17)

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a) Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b) County of Residence.** For each civil case filed, except U.S plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U S plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved )

**(c) Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)"

**II. Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U S. is a party, the U S plaintiff or defendant code takes precedence, and box 1 or 2 should be marked
Diversity of citizenship. (4) This refers to suits under 28 U.S C 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.)**

**III. Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV. Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V. Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U S.C., Section 1441 When the petition for removal is granted, check this box.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U S C Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U S C Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

**VI. Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example. U S. Civil Statute: 47 USC 553 Brief Description. Unauthorized reception of cable service

**VII. Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII. Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet

MAY 20 2019

Case 2:19-cv-02222-ER Document 1-1 Filed 05/20/19 Page 3 of 3



UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

19 2222

DESIGNATION FORM

*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: 2940 A. Waldorf Avenue, Camden, NJ

Address of Defendant: 651 Weybridge Court, Lake Mary, FL and 701 Adams Avenue, Philadelphia, PA

Place of Accident, Incident or Transaction: 701 Adams Avenue, Philadelphia, PA

***RELATED CASE, IF ANY:***

Case Number: ______ Judge: ______ Date Terminated: ______

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court? Yes ☐ No ☒
2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court? Yes ☐ No ☒
3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court? Yes ☐ No ☒
4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual? Yes ☐ No ☒

I certify that, to my knowledge, the within case ☐ is / ☒ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 5/22/2019 [signature] 48737
*Attorney-at-Law / Pro Se Plaintiff* *Attorney I.D. # (if applicable)*

**CIVIL: (Place a √ in one category only)**

*A. Federal Question Cases:*

- ☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
- ☐ 2. FELA
- ☐ 3. Jones Act-Personal Injury
- ☐ 4. Antitrust
- ☐ 5. Patent
- ☐ 6. Labor-Management Relations
- ☑ 7. Civil Rights
- ☐ 8. Habeas Corpus
- ☐ 9. Securities Act(s) Cases
- ☑ 10 Social Security Review Cases
- ☒ 11. All other Federal Question Cases *(Please specify):* Americans with Disabilities Act

*B. Diversity Jurisdiction Cases:*

- ☐ 1. Insurance Contract and Other Contracts
- ☐ 2. Airplane Personal Injury
- ☐ 3. Assault, Defamation
- ☐ 4. Marine Personal Injury
- ☐ 5. Motor Vehicle Personal Injury
- ☐ 6. Other Personal Injury *(Please specify):* ______
- ☐ 7. Products Liability
- ☐ 8. Products Liability – Asbestos
- ☐ 9. All other Diversity Cases *(Please specify):* ______

**ARBITRATION CERTIFICATION**

*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, Steven C. Feinstein, counsel of record *or* pro se plaintiff, do hereby certify:

☐ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☒ Relief other than monetary damages is sought.

MAY 20 2019

DATE: 5/22/2019 [signature] 48737
*Attorney-at-Law / Pro Se Plaintiff* *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

*Civ. 609 (5/2018)*


Case 2:19-cv-02222-ER Document 1-1 Filed 05/20/19 Page 4 of 5

ER

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**CASE MANAGEMENT TRACK DESIGNATION FORM**

Eduardo Rosario : CIVIL ACTION
v. :
Alex Torres Productions, Inc and La Guira, Inc. d/b/a Red Wine Restaurant : NO. 19 2222

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255. ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits. ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2. ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos. ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.) ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks. ( x )

| 5/15/2019 | Steven C. Feinstein, Esquire | Plaintiff |
|---|---|---|
| **Date** | **Attorney-at-law** | **Attorney for** |
| 267 833 0200 | 267 833 0300 | scfeinstein@optimumlawgroup.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

MAY 20 2019

MAY 20 2019

**Civil Justice Expense and Delay Reduction Plan**
**Section 1:03 - Assignment to a Management Track**

(a) The clerk of court will assign cases to tracks (a) through (d) based on the initial pleading.

(b) In all cases not appropriate for assignment by the clerk of court to tracks (a) through (d), the plaintiff shall submit to the clerk of court and serve with the complaint on all defendants a case management track designation form specifying that the plaintiff believes the case requires Standard Management or Special Management. In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a case management track designation form specifying the track to which that defendant believes the case should be assigned.

(c) The court may, on its own initiative or upon the request of any party, change the track assignment of any case at any time.

(d) Nothing in this Plan is intended to abrogate or limit a judicial officer's authority in any case pending before that judicial officer, to direct pretrial and trial proceedings that are more stringent than those of the Plan and that are designed to accomplish cost and delay reduction.

(e) Nothing in this Plan is intended to supersede Local Civil Rules 40.1 and 72.1, or the procedure for random assignment of Habeas Corpus and Social Security cases referred to magistrate judges of the court.

**SPECIAL MANAGEMENT CASE ASSIGNMENTS**
**(See §1.02 (e) Management Track Definitions of the Civil Justice Expense and Delay Reduction Plan)**

Special Management cases will usually include that class of cases commonly referred to as "complex litigation" as that term has been used in the Manuals for Complex Litigation. The first manual was prepared in 1969 and the Manual for Complex Litigation Second, MCL 2d was prepared in 1985. This term is intended to include cases that present unusual problems and require extraordinary treatment. See §0.1 of the first manual. Cases may require special or intense management by the court due to one or more of the following factors: (1) large number of parties; (2) large number of claims or defenses; (3) complex factual issues; (4) large volume of evidence; (5) problems locating or preserving evidence; (6) extensive discovery; (7) exceptionally long time needed to prepare for disposition; (8) decision needed within an exceptionally short time; and (9) need to decide preliminary issues before final disposition. It may include two or more related cases. Complex litigation typically includes such cases as antitrust cases; cases involving a large number of parties or an unincorporated association of large membership; cases involving requests for injunctive relief affecting the operation of large business entities; patent cases; copyright and trademark cases; common disaster cases such as those arising from aircraft crashes or marine disasters; actions brought by individual stockholders; stockholder's derivative and stockholder's representative actions; class actions or potential class actions; and other civil (and criminal) cases involving unusual multiplicity or complexity of factual issues. See §0.22 of the first Manual for Complex Litigation and Manual for Complex Litigation Second, Chapter 33.

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EDUARDO ROSARIO, | : | CIVIL CASE |
| | : | |
| Plaintiff(s) | : | Case No. 2:19-cv-02222-ER |
| | : | |
| v. | : | Philadelphia, Pennsylvania |
| | : | December 20, 2019 |
| ALEX TORRES PRODUCTIONS, | : | Time 10:28 a.m. to 10:50 a.m. |
| INC, et al | : | |
| | : | |
| Defendant(s) | : | |

. . . . . . . . . . . . . . .

TRANSCRIPT OF PRETRIAL CONFERENCE
BEFORE THE HONORABLE EDUARDO C. ROBERENO
UNITED STATES DISTRICT COURT JUDGE

APPEARANCES:

| | |
|---|---|
| For the Plaintiff(s): | Steven C. Feinstein<br>Feinstein Law Office<br>107 Wayne Court<br>West Chester, PA 19380 |
| For Defendant Name: | Alex Torres, Pro Se<br>Alex Torres Productions, Inc<br>651 Weybridge Court<br>Lake Mary, FL 32746<br>City, State Zip |
| Court Recorder: | Kenneth Duvak<br>Clerk’s Office<br>U.S. District Court |
| Transcription Service: | Precise Transcripts<br>45 N. Broad Street<br>Ridgewood, NJ 07450 |

Proceedings recorded by electronic sound recording; transcript produced by transcription service.

(Proceedings started at 10:28 a.m.)

DEPUTY CLERK RONALD VANCE: All rise. The United States District Court for the Eastern District of Pennsylvania is now in session. The Honorable Eduardo C. Roberno presiding.

JUDGE EDUARDO C. ROBERNO: Good morning, please be seated.

ALEX TORRES: Good morning.

THE COURT: Okay. Is there anyone in the courtroom or on the phone on behalf of the plaintiff Rosario?

COUNSEL STEVEN FEINSTEIN: Your Honor this is Steve Feinstein. My appearance is entered for Mr. Rosario. When the complaint was filed in this case it was filed under the law firm of Optimum Law Group and on November 26th I left Optimum Law Group, I subsequently received a letter --

THE COURT: Hold - hold on a second. What's going on here Kenneth? There's - there's a phone ringing.

ESR KENNETH DUVAK: I think that’s on his end Judge. I think that’s a phone in his office ringing.

THE COURT: Oh okay. Is that a phone in your office Mr. Feinstein?

MR. FEINSTEIN: No, there's nothing ringing in my office.

THE COURT: Okay.

MR. FEINSTEIN: I do hear that but that not in my office.

THE COURT: Okay. Okay, well let's proceed.

MR. FEINSTEIN: Your Honor, as I was saying. I left Optimum Law Group on November 26th just before Thanksgiving and I received a letter from them indicating that I was not to communicate with any clients and not to do anything on behalf of any of their cases. I instructed them to substitute my appearance in on any of the cases that -- substitute the appearance from anything that I had. I'd also received a - a part of the exchange of the communications where -- that they were going to absolute change my credentials, my lobbying credentials, to prevent me from lobbying in. So, the first thing I did after - after I received that was go into all of the various places where I could find --

THE COURT: Now hold on a second. There is a ringing going on here.

MR. FEINSTEIN: Okay.

ESR: It's not coming in over there.

THE COURT: Okay, let's - let's proceed. Mr. Fein-

MR. FEINSTEIN: Yes, part of the communications that I received from them was a (indiscernible) to change

all of my lobbying credentials on all of the electronic filing notifications and jurisdictions, so I immediately went in and changed my - my passwords and all the contact information which is why it - it’s still - it -- when - when I did that it automatically updated my appearance on any case that I was in and changed it to Feinstein - Feinstein Law Office as opposed to Optimum Law Group. But if you pull up the complaint that was filed, you’ll see that it was filed under Optimum Law Group. They did receive notice of this hearing and I had no explanation to why they didn’t send someone over. I apologize to the Court because obviously if I had known they weren't going to I would’ve been there. They have been specifically instructed to substitute my appearance in every case in which I was involved in an Optimum case. And, I will immediately file a petition to have my formal appearance withdrawn and I will put Optimum on notice of what happened this morning and let them know that, you know, I’m not very happy about what they did, as I’m sure you are not as well. So, again my apologies to the Court, I did know about this hearing, I did but as I said they were - they were advised of the hearing as well and they should’ve sent somebody, so.

THE COURT: Now, let me ask you this. When did this event happen that you were dismissed from Optimum or

terminated?

MR. FEINSTEIN: Well actually I resigned from them on October -- on November 26th.

THE COURT: November 26th.

MR. FEINSTEIN: I have --

THE COURT: Okay.

MR. FEINSTEIN: November 26th. I've also just finished a two-week jury trial and this was, you know, my mind actually wasn't on, you know, my calendar but I have been communicating with them because they owe me money and they owe me information about cases that I - that I retained and they have -- they just stopped communicating with me and I asked them several times to substitute their appearance send (indiscernible) for my appearance, but.

THE COURT: Now, did you - did you - you drafted the complaint in this case?

MR. FEINSTEIN: I believe that I did. Yeah, I did. As a matter of fact I did based upon a sample that was provided to me by one of the paralegals at Optimum, but yes, I did draft the complaint.

THE COURT: Yeah, because it's signed by you.

MR. FEINSTEIN: Yeah.

THE COURT: And, there was - there was an issue of whether this promoter was in Florida -- was properly sued in this case and I'm looking to some law that would

allow that to - to take place. Was there any research done here that would warrant suing a promoter an - an artist who performed?

MR. FEINSTEIN: I - I personally did not do any research with regard to that. The -- I believe that the sample complaint that I had was a similar set of circumstances and -- but the way I read the statute, when I did read the provisions of the statute I - I did read it to include that a promoter could be held responsible under these circumstances. I - I did 'cause I remember - I remember -- and this a long time ago through, gosh it was several months, and I remember reading this and the way I - I read it I - I thought that the statute was rather extensive and included people who were running promotions at the facility and that they were obligated to - to - to provide access to - to handicap people.

THE COURT: Do you have any - any case law that supports that interpretation?

MR. FEINSTEIN: No, I'm sorry do any specific research with regard to that.

THE COURT: Mm-hm. Okay. Well, who is the person at Optimum Law Group, who was the senior person there?

MR. FEINSTEIN: Well the managing attorney is - is a gentleman by the name of Joseph Lento.

THE COURT: Wisro?

MR. FEINSTEIN: Lento, L-E-N-T-O.

THE COURT: Okay, spell - spell it for us again.

MR. FEINSTEIN: L-E-N-T-O.

THE COURT: Oh, Lento.

MR. FEINSTEIN: I also (indiscernible) that he’s not admitted in the Eastern District.

THE COURT: Okay. Okay. Well, this -- Mr. Feinstein, I - I hope to say a learning lesson. When your name is on the complaint until your relief from that obligation, you are the lawyer of record. You can't tell --

MR. FEINSTEIN: You’re right sir, I was - I was not careful, I should have taken care of that.

THE COURT: Yeah.

MR. FEINSTEIN: I apologize.

THE COURT: Because you can't just tell somebody else, you know, I’m out of here you take care of it and rely upon that because we rely on the lawyer of record --

MR. FEINSTEIN: Yes.

THE COURT: We have - we have the defendant is here today and he had been inconvenienced by having to show up here when there's nobody here from the other side. And that’s --

MR. FEINSTEIN: Well, like I said, I apologize to

the Court and I apologize to Mr. Torres --

THE COURT: Yeah.

MR. FEINSTEIN: -- certainly no disrespect was intended. I, you know, this was -- it is my responsibility because my appearance is entered, but I genuinely thought somebody would be covering it from Optimum --

THE COURT: Right.

MR. FEINSTEIN: -- and I will make sure that my appearance is withdrawn, somebody else is subst- substituted in.

THE COURT: Yeah. Well, I think the solution to this problem is going to be that we're gonna start, if the Plaintiff wants, all over again. I'm gonna dismiss the case without prejudice and --

MR. FEINSTEIN: Okay.

THE COURT: -- I'm going to strike - I'm gonna strike the - the default and -- because no lawyer is really representing the Plaintiff in this case --

MR. FEINSTEIN: Okay.

THE COURT: And somebody's gonna have to come up with some cause of action that is supported by - by law. You're handed representation that you didn't do any research concerning bringing in a party to the case. Is from a (indiscernible) rule 11 sanctionable, but to the

extent --

MR. FEINSTEIN: But not -- Your Honor, with all due respect, if I viewed the statute as being extensive, I had a good faith basis for - for including that.

THE COURT: No. Okay, I - I didn't say it was, I said it was from a (indiscernible), okay, case.

MR. FEINSTEIN: Okay. Okay.

THE COURT: You don't have an explanation for it. So I don't know whether anybody's interested in pursuing this matter but I think that this is something that is troublesome -- now is Optimum Law have any other lawyers other than Mr. Lento?

MR. FEINSTEIN: I'm sorry what, I could understand --

THE COURT: Yeah. Are there any other lawyers in Optimum Law other than Mr. Lento?

MR. FEINSTEIN: Yes, there are several.

THE COURT: Okay.

MR. FEINSTEIN: But it's sort of a decentralized law firm and people -- it's really kind of a (indiscernible) who are operating under one letterhead --

THE COURT: I - I see.

MR. FEINSTEIN: But they're -- so they're individual counsels, it's not a traditional type law firm --

THE COURT: Okay.

MR. FEINSTEIN: -- where - where you go to a central location and -- we're all remote - remote people, well we were, but.

THE COURT: Now, 1615 South Broad, is that where -- let me see, you know, they're - they're located on 1500 Market Street.

MR. FEINSTEIN: Yeah, that - that - that is a virtual office. The primary - the primary office is located in New Jersey.

THE COURT: Yeah.

MR. FEINSTEIN: That's a virtual office, I - I -- the 1615 address, I'm not sure why it would've been in the complaint but that's law office of (indiscernible) Conrad Benedetto.

THE COURT: Yeah, right.

MR. FEINSTEIN: Not a member of Optimum but who had - who probably drafted the original complaint that was given to me as a sample. I -- if that address appears in the complaint it's probably a (indiscernible) error of some kind but I'm not sure since I don't have the complaint in front of me.

THE COURT: Well let's see, the complaint says 1500 Market Street and is - is signed by you.

MR. FEINSTEIN: Yes.

THE COURT: In - in there Mr. Benedetto's name is on the docket but is says he was terminated as of July 1, 2019.

MR. FEINSTEIN: Oh, you know what, that -- he just told me that.

THE COURT: Yeah.

MR. FEINSTEIN: Is my -- the first time I've heard that.

THE COURT: Yeah.

MR. FEINSTEIN: Mr. Benedetto refers cases to Optimum. I was given it to draft a complaint and - and - and - and to file suit in the case. I had no idea that the case had actually originated with Conrad or that maybe he had (indiscernible) 'cause when I filed it, I filed it as an original lawsuit with all the original cover sheets. There -- I don't have any idea why Conrad would've been on the docket. Do you want - do you want the -- the telephone number that's on the complaint is -- I do believe that holds through to (indiscernible) so --

THE COURT: Let's see - let's see what it says here, I think it has a 50 -- he has 267, which I guess is Philadelphia extensively, 833-0200.

MR. FEINSTEIN: Yes, got it. That went through to the New Jersey office.

THE COURT: Now, have you ever met Mr. Rosario?

MR. FEINSTEIN: Have I met Mr. -- I have not personally met Mr. Rosario.

THE COURT: Okay. Okay. Well --

MR. FEINSTEIN: The - the file's reviewed by others in Optimum --

THE COURT: Yeah.

MR. FEINSTEIN: -- and I was requested to file the complaint.

THE COURT: Yep. Okay, we are putting your - your name on it and - and you will have -- you have a license to protect so how long have you been practicing law?

MR. FEINSTEIN: Thirty-four years Your Honor.

THE COURT: Okay, so I think you - you know better Mr. Feinstein. This is -- your whole story, which I appreciate by the way, your candor, is very troubling.

MR. FEINSTEIN: All -- I understand Your Honor, it's one of the reasons why I'm no longer with Optimum.

THE COURT: Yeah.

MR. FEINSTEIN: I had significant concerns about the - some of the ethical things that were going on in that firm and there were other issues that - that were -- you know, I don't really want to get into it but there are very significant and specific reasons why I'm no longer with that firm. I, you know, and I'll be fully candid, I

graduated in - in '85', I - I previously had some -- a run in with the disciplinary board and I've been doing everything I possibly can to avoid every having to do that again. So, I do appreciate and understand everything that you're saying and that's part of the reason why I'm no longer with Optimum because I felt at various times that my license might be at risk based upon things that they were doing. So -- and again, I wasn't with them all that long. I started with them in, I think April, and it terminated in November because I just didn't like the way things were going down. But, in the meantime I do -- I just said -- I do appreciate your comments and I'm taking them to heart and nothing like this will ever happen again.

THE COURT: And you are in West Chester now, right?

MR. FEINSTEIN: Yeah, my office is - my personal office in West Chester, yeah. But actually you're talking to me on my cell phone so I'm not sitting --

THE COURT: Okay.

MR. FEINSTEIN: -- there right now, but that's where my office is.

THE COURT: At 107 Wayne Court, West Chester, Pennsylvania?

MR. FEINSTEIN: Yes.

THE COURT: Okay. Very good. I think we're going to terminate then your participation in this, I said is my intend then to dismiss the case and strike the default and --

MR. FEINSTEIN: Okay.

THE COURT: -- allow you to also -- I'm going to allow you to withdraw from the case.

MR. FEINSTEIN: Okay.

THE COURT: But in the way out of withdrawal you are to serve the copy of the order that I entered in the case upon the Optimum Law Group, PC. and --

MR. FEINSTEIN: I'll - I'll - I'll file - I'll file a copy -- I'll serve them with a copy of my petition and I'll serve them with any order.

THE COURT: And also the extent that you know Mr. Rosario's address, do you know that?

MR. FEINSTEIN: Let me see if I have that. Hold on. I have it as 2940 A Waldorf Avenue, Camden, New Jersey.

THE COURT: Okay. So, you are directed by the Court to serve Mr. Rosario as well as Optimum Law Group, PC --

MR. FEINSTEIN: Okay.

THE COURT: -- with a copy of the order that I'm going to enter in this case --

MR. FEINSTEIN: Okay.

THE COURT: -- and then they'll - they'll have to proceed which ever way they - they would like to. Okay, thank you Mr. Feinstein.

MR. FEINSTEIN: So -- okay, thank Your Honor I appreciate it.

THE COURT: Thank you.

MR. FEINSTEIN: Thank you.

THE COURT: Thank you. Okay, good morning. Sir, would I have your name?

MR. TORRES: Alex Torres.

THE COURT: Okay. Mr. Torres, let's see, you are the promoter for this --

MR. TORRES: Yes, sir.

THE COURT: Okay.

MR. TORRES: Yes, Your Honor.

THE COURT: Now - now you're from Florida?

MR. TORRES: Yes.

THE COURT: Okay, so you came up for this matter?

MR. TORRES: I drove, I've been driving for two days.

THE COURT: Okay. Well, what about the - the other defendant has - has the other defendant been served? La Guira?

MR. TORRES: Huh?

THE COURT: Right. Well no it says here default against La Guira. Okay, that was entered, right? Okay. Okay. Well -- but the hearing today was on -- okay Mr. Torres file and answer, La Guira has not appeared, right? Okay. Okay. Well, this is what we're going to do, we're gonna dismiss the case and we'll see where that goes from there. I think what you should do Mr. Torres, is leave your phone number --

MR. TORRES: Okay.

THE COURT: -- so that if we have further proceeding you may not necessarily have to come from Florida.

MR. TORRES: Thank you.

THE COURT: I think it's been a burden on you that is - is - is - is unfair burden on you to have you - have you drive up here and then there is no one here from the plaintiff's side. So, let me -- let's - let's go off the record here for a moment. The Court finds after hearing from counsel for the plaintiff in this case and hearing from defendant Alex Torres Production, Inc. that the case should be dismissed for failure to prosecute and the default that was entered against La Guira Inc. will be stricken and the matter may be terminated with the exception that the Court will retain jurisdiction to impose sanctions upon any of the lawyers who has

represented plaintiff in this case that is Optimum Law Group, PC, Feinstein Law Office and/or to refer these -- well including the reference of this matter to the disciplinary board for further action. So, you have any questions Mr. Torres?

MR. TORRES: Yes.

THE COURT: Yeah.

MR. TORRES: Does that mean they can sue me again?

THE COURT: They could if they wanted to, they could sue you again, yes. But we'll see where that goes.

MR. TORRES: Okay.

THE COURT: Yeah.

MR. TORRES: I was just asking because since it's not my building, was the first time I was there --

THE COURT: I understand that.

MR. TORRES: And I was, like, a little bit confused and.

THE COURT: I asked him that question.

MR. TORRES: So --

THE COURT: So it -- I asked him that question and I will ask put in the order that if you were to refile the -- if they were to refile this case they should provide some legal authority from the proposition that under these circumstances the promoter will bear some

liability. As you heard him, his explanation is that he read statute but he didn't do any research that applied the statute to the facts of this case. Okay. Very good. Okay, thank you.

MR. TORRES: Thank you.

THE COURT: Hearing is adjourned.

MR. TORRES: Happy holidays to everyone.

THE COURT: Thank you.

(Court adjourned at 10:50 a.m.)

CERTIFICATE

I, Stephanie Garcia, court approved transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter.

January 6, 2020

IN THE UNITED STATES COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EDUARDO ROSARIO | : | CIVIL NO. 2:19-cv-2222 |
| | : | |
| v. | : | |
| ALEX TORRES PRODUCTIONS, INC. | : | |
| | : | |
| and | : | |
| | : | |
| LA GUIRA, INC. d/b/a RED WINE RESTAURANT | : | |

**STEVEN C. FEINSTEIN'S RESPONSE TO THE COURT'S RULE TO SHOW CAUSE**

1. Steven C. Feinstein is an attorney, licensed to do practice law in the Commonwealth of Pennsylvania, the United States District Court for the Eastern District of Pennsylvania, the United States Circuit Court of Appeals for the Third Circuit and the United States District Court for the Eastern District of Arkansas. ("Feinstein")

2. Feinstein graduated from Villanova Law School in 1985 and was licensed to practice law in the Commonwealth of Pennsylvania in May of 1987.

3. Optimum Law Group, Inc., is a corporation duly organized and existing under the laws of New Jersey but authorized to do business in the Commonwealth of Pennsylvania.

4. Optimum Law Group, Inc. was created under that name in the State of New Jersey, in February, 2019.

5. Upon information and belief, it was operating under the name Optimum Law Group, P.C. since its inception and through at least January 7, 2020. ("Optimum")

6. Upon information and belief, Optimum began operating under the name Lento Law Group ("Lento Law")

7. As of the date of this filing, there are no business entities registered in either the State of New Jersey or the Commonwealth of Pennsylvania under the name of Lento Law Group.

8. Upon information and belief, Lento Law is Optimum doing business as Lento Law as they have the same office addresses, the same telephone numbers, the same attorneys and the website located at optimumlawgroup.com redirects people to a website located at lentolawgroup.com.

9. In the alternative, Lento Law Group is a new business entity, which has taken over the practice of Optimum, including all of its files, assets and liabilities.

10. Optimum and/or Lento Law is a decentralized law firm, made up of sole practitioners operating under one banner, ostensibly run by Joseph D. Lento, Esquire, who was designated as the founder and managing attorney.

11. In March or April of 2019, Feinstein met with John Groff, who represented himself to be a paralegal and the office manager of Optimum to discuss the possibility of Feinstein's working under Optimum's banner.

12. Subsequently, Feinstein agreed to work with Optimum.

13. Almost from the beginning, Feinstein experienced problems with Optimum in terms of it complying with its obligations of its agreement with Feinstein.

14. Optimum assigned Feinstein the instant case, was given a synopsis of the facts, the identity of the parties and a sample complaint to use as a template.

15. Eduardo Rosario is a client of Optimum's and, to the best of Feinstein's knowledge, the case had originated with Optimum.

16. After satisfying himself that the facts set forth a prima facie case under the relevant statutes. Feinstein prepared the complaint and sent it to Optimum for review and filing, which, in fact was done.

17. Subsequent thereto, Optimum filed a default against Defendant, La Guira, Inc.

18.     In the interim, the Court sent notices to Feinstein and other representatives of Optimum concerning the Rule 16 Conference scheduled for December 20, 2019. A copy of the notice from the Court is attached hereto and marked as Exhibit "A".

19.     During this time, Feinstein grew concerned about the manner in which Optimum was being run and whether it had long term viability.

20.     Specifically, Optimum continued to fail to comply with its contract with Feinstein by not providing negotiated for benefits, was consistently late with the payment of his wages and appeared to have cash flow problems.

21.     In addition, Feinstein related ethical concerns to Groff on two occasions which were never addressed in an appropriate manner.

22.     On or about November 26, 2019, the Feinstein's problem with Optimum came to a head.

23.     Between November 26, 2019 and November 27, 2019, a number of emails were sent between Feinstein and Optimum.

24.     In one of the emails, Lento "suspended" Feinstein, and directed that Feinstein not work on any of Optimum's files until the issues between Feinstein and Optimum could be resolved.

25.     Lento also threatened to change the login information in various jurisdictions to as to preventing Feinstein from efiling documents. Copies of the relevant emails are attached hereto and marked as Exhibit "B".

26.     On or about November 27, 2019, Feinstein sent an email resigning from Optimum, citing its multiple material breaches of the employment contract as the basis. A copy of the email is attached hereto and marked as Exhibit "C".

27.     Feinstein immediately changed his login information so as to prevent Optimum

from taking such retaliatory action.

28.     Prior to November, 27, 2019, Feinstein's profile in the United States District Court for the Eastern District of Pennsylvania, indicated that he was associated with Optimum, and provided his Optimum email address and telephone numbers for his contact information.

29.     When Feinstein changed his login information, he changed his profile to identify an association with Feinstein Law Office, with updated email addresses and telephone numbers, which automatically updated his information on all cases in which his appearance was entered in this jurisdiction, including the instant case.

30.     Upon Feinstein's resignation, Optimum blocked his access to its online case management system, within which was Optimum's calendar and access to all of the files.

31.     It also locked him out of his Optimum's email account.

32.     As such, as of November 27, 2019, Feinstein did not have access to any information with regard to the instant case, including, but not limited to the entire file.

33.     Significantly, the case management system is set up to send reminders to Optimum's attorneys as to hearings on its calendars.

34.     Although Feinstein had received notice of the Rule 16 Conference in the instant case, it was not on his personal calendar, only Optimum's calendar, to which he did not have access as of November 27, 2019.

35.     Feinstein did not receive any reminders as to the case management conference in the instant case because he did not have access to that email account.

36.     Subsequent to resigning, Feinstein requested both in phone calls and emails, that Optimum file substitutions of appearance in any case in which Feinstein's appearance was entered on any case which originated with Optimum, including the instant case. Copies of the relevant

emails are attached hereto and marked as Exhibit "D".

37.     Unfortunately, Feinstein's problems with Optimum continued after his resignation.

38.     Feinstein did not appear for the Rule 16 Conference in the instant matter.

39.     Feinstein did not seek to withdraw his appearance in the instant matter before the scheduled Rule 16 Conference.

40.     Feinstein did not have the hearing on his personal calendar and had requested that Optimum file substitutions of appearances as more fully set forth above.

41.     Feinstein had no idea that Optimum would not send someone to cover the Rule 16 Conference in the instant action, or in any other actions in which his appearance was entered.

42.     The Court called Feinstein on December 20, 2019, to inquire as to why he did not appear at the Conference.

43.     During said call, Feinstein explained the facts described above, but not in as much detail.

44.     The Court advised Feinstein that he was going to dismiss the complaint and that he was to withdraw his appearance, and to send copies of everything to the Plaintiff and Optimum.

45.     On December 20, 2019, Feinstein emailed Optimum with regard to the conference with the Court. A copy of the email is attached hereto and marked as Exhibit "E".

46.     Optimum did not respond to the email.

47.     Feinstein waited for the Court to dismiss the Complaint to do so as that is how he understood the Court's directions. A copy of the January 13, 2020, order is attached hereto and marked as Exhibit "F".

48.     Feinstein emailed a copy of the January 13, 2020, Order to Optimum on the same date. A copy of the email is attached hereto and marked as Exhibit "G".

49.     Optimum did not respond to the email.

50.     During the preparation of this Response, Feinstein was initially unable to locate Exhibit "G".

51.     Subsequent to Feinstein's resignation, he forwarded all notices or documents he received with regard to any case in which his appearance was entered on behalf of its clients.

52.     Despite repeated requests and notifications, Optimum did not begin to file substitutions of appearance until January 2020.

53.     As a result of the above, and other issues, on January 7, 2020, Feinstein filed suit against Optimum to recover monies and other benefits owed to him for work he did during his tenure with the firm.

54.     Said litigation is still pending and Optimum is currently in default.

55.     Feinstein offers the above facts not as an excuse, but as an explanation for the circumstances which lead to him missing the Rule 16 Conference.

56.     Feinstein has never missed a hearing or conference at any time during his career and asks the Court to accept this an anomaly that resulted from a series of unusual events.

57.     The only thing that Feinstein can do is apologize to the Court and the parties and state that no disrespect was intended to either.

WHEREFORE, Feinstein respectfully requests that this Honorable Court not sanction him for his inadvertent failure to attend the Rule 16 Conference, or to take any other action against him

Respectfully Submitted,

Feinstein Law Office

By: ______________________________

Steven C. Feinstein, Esquire
107 Wayne Court
West Chester, Pa 19380
(610) 864-4854
Feinsteinlawoffice@gmail.com

**CERTIFICATION OF SERVICE**

I, Steven C. Feinstein, Esquire, hereby certify that I served the attached document and exhibits on this day by first class mail, postage pre-paid to the following:

Joseph D. Lento, Esquire
Lento Law Group
3000 Atrium Way - Suite 200
Mt. Laurel, NJ 08054
And
Eduardo Rosario
2940A Waldorf Avenue
Camden, NJ 08105

**FEINSTEIN LAW OFFICE**

BY: /s/Steven C. Feinstein
STEVEN C. FEINSTEIN, ESQUIRE
Attorney for Plaintiff

Dated: February 6, 2020

EXHIBIT “A”

## Fwd: Activity in Case 2:19-cv-02222-ER ROSARIO v. ALEX TORRES PRODUCTIONS, INC. et al Notice of Hearing

Steven Feinstein <scf97@hotmail.com>

Sun 1/26/2020 4:58 PM

**To:** Steven Feinstein <scf97@hotmail.com>

Sent from my iPhone

Begin forwarded message:

> **From:** scf97@hotmail.com
> **Date:** October 31, 2019 at 10:24:33 AM EDT
> **To:** ljones@optimumlawgroup.com
> **Subject: Fwd: Activity in Case 2:19-cv-02222-ER ROSARIO v. ALEX TORRES PRODUCTIONS, INC. et al Notice of Hearing**
>
> Sent from my iPhone
>
> Begin forwarded message:
>
> > **From:** "ecf_paed@paed.uscourts.gov" <ecf_paed@paed.uscourts.gov>
> > **Date:** October 31, 2019 at 10:23:40 AM EDT
> > **To:** "paedmail@paed.uscourts.gov" <paedmail@paed.uscourts.gov>
> > **Subject: Activity in Case 2:19-cv-02222-ER ROSARIO v. ALEX TORRES PRODUCTIONS, INC. et al Notice of Hearing**
> >
> > **This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**
> > *****NOTE TO PUBLIC ACCESS USERS*** Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**
> >
> > **United States District Court**

**Eastern District of Pennsylvania**

### Notice of Electronic Filing

The following transaction was entered on 10/31/2019 at 10:22 AM EDT and filed on 10/31/2019

**Case Name:** ROSARIO v. ALEX TORRES PRODUCTIONS, INC. et al
**Case Number:** 2:19-cv-02222-ER
**Filer:**
**Document Number:** 7

**Docket Text:**
**NOTICE: A pretrial conference will be held on December 20, 2019 at 10:00 a.m. in Courtroom 15A before the HONORABLE EDUARDO C. ROBRENO. Copy of Notice mailed to Pro Se Defendant, Alex Torres Productions, Inc. by Chambers on 10/31/2019. (nds)**

**2:19-cv-02222-ER Notice has been electronically mailed to:**

CONRAD J. BENEDETTO (Terminated) cjbenedetto@benedettolaw.com, ljones@cjbenedettolaw.com

STEVEN C. FEINSTEIN scfeinstein@optimumlawgroup.com, JEDWARDS@OPTIMUMLAWGROUP.COM, notices@optimumlawgroup.com, scf97@hotmail.com

**2:19-cv-02222-ER Notice will not be electronically mailed to:**

ALEX TORRES PRODUCTIONS, INC.
651 Weybridge Court
Lake Mary, FL 32746

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1001600548 [Date=10/31/2019]
[FileNumber=16562115
-0]
[12f7e44aa5c3e54d65e0cc4545bfbf7e7a1a027169f850d4f958bb196e9875444
eb8b8cd939fe95e96dc2747d0aa01f58aef0ea96028bbfd1c250243435d2f7a]]

EXHIBIT “B”

Case 2:19-cv-02222-ER Document 12 Filed 02/06/20 Page 13 of 45

**Steve:**

With all due respect, who do you think you are speaking to like that or demanding from the Firm?

In light of this, until you have the time to sit down with our team and understand your position here at Optimum, you are not to act on behalf of Optimum.

**Terri:**

Cancel any depositions and complaints to be filed until further notice.

**Dave:** Suspend all credentials until Steve meets with us.

**Steve:** Good Luck in your future endeavors if you choose to go elsewhere or file anything on your own.

**Everyone**, be guided accordingly.

Joseph D. Lento

Attorney at Law

Managing Attorney / Founder
Optimum Law Group, P.C.
3000 Atrium Way - Suite # 200
Mt. Laurel, NJ 08054
856-652-2000 - Office
856-375-1010 - Fax
www.Optimumlawgroup.com

CONFIDENTIALITY NOTICE: The information contained in this e-mail message is privileged and confidential, and intended only

Case 2:19-cv-02222-ER Document 12 Filed 02/06/20 Page 14 of 45

EXHIBIT “C”

## Re: Complaints to be filed

Steven Feinstein <scf97@hotmail.com>

Wed 11/27/2019 12:03 PM

**To:** jdlento@optimumlawgroup.com <jdlento@optimumlawgroup.com>
**Cc:** tmorphew@optimumlawgroup.com <tmorphew@optimumlawgroup.com>; dhaislip@optimumlawgroup.com <dhaislip@optimumlawgroup.com>; jedwards@optimumlawgroup.com <jedwards@optimumlawgroup.com>

Please remove me from the Optimum website immediately.
There will be no meeting.

I will send in my final invoice, substitute my appearance in any case that is filed in my name. I have changed my credentials for the EDPA and Philadelphia.

Give me an amount advanced on any costs in any cases and I will pay them when those cases settle. If you do not send them, I will assume that you waived them.

Optimum is and has been in material breach of my contract with it and I am done with it.

Other than for the above, do not contact me again.

Sent from my iPhone

> On Nov 27, 2019, at 11:14 AM, "jdlento@optimumlawgroup.com" <jdlento@optimumlawgroup.com> wrote:
>
> <left.letterhead>
>
> **Steve:**
>
> With all due respect, who do you think you are speaking to like that or demanding from the Firm?
>
> In light of this, until you have the time to sit down with our team and understand your position here at Optimum, you are not to act on behalf of Optimum.
>
> **Terri:**
>
> Cancel any depositions and complaints to be filed until further notice.
>
> **Dave:** Suspend all credentials until Steve meets with us.
>
> **Steve:** Good Luck in your future endeavors if you choose to go elsewhere or file anything on your own.
>
> **Everyone**, be guided accordingly.

EXHIBIT “D”



Steven Feinstein <feinsteinlawoffice@gmail.com>

## Bennedetto v. Watson

**Steven Feinstein** <feinsteinlawoffice@gmail.com> Thu, Dec 19, 2019 at 11:15 AM
To: Joseph Lento <jdlento@optimumlawgroup.com>, J Edwards <jedwards@optimumlawgroup.com>, Conrad Benedetto <cjbenedetto@benedettolaw.com>

Attached please find a rule to show cause that was served on my by certified mail today. Please have someone substitute their appearance in for mine as I will not be attending, per the letter I got from Joe Lento to immediately stop doing any work on Optimum cases and to not contact Optimum clients.

Please substitute my appearance in all of the Optimum cases. If I am held accountable on files in which I am no longer representing the clients or have access to the files, I will hold Optimum responsible.

--

**bennedetto v. watson rule to show cause.pdf**
6825K

Case 2:19-cv-02222-ER Document 12 Filed 02/06/20 Page 18 of 45

Steven Feinstein <feinsteinlawoffice@gmail.com>

---

## Notice of order on Case #190704102

---

**Steven C. Feinstein** <feinsteinlawoffice@gmail.com> Thu, Dec 26, 2019 at 4:39 PM
To: jedwards@optimumlawgroup.com
Cc: David Haislip <dhaislip@optimumlawgroup.com>, Joseph Lento <jdlento@optimumlawgroup.com>

I believe I told Teri that a month ago, but yes

Sent from my iPhone

On Dec 26, 2019, at 4:37 PM, jedwards@optimumlawgroup.com wrote:

<left.letterhead> Are you given permission to use your electronic signature on all substitutions?

**J. Edwards**
Office Manager
Optimum Law Group, P.C.
3000 Atrium Way - Suite # 200
Mt. Laurel, NJ 08054
856-652-2000 - Office
856-375-1010 - Fax
www.Optimumlawgroup.com

CONFIDENTIALITY NOTICE: The information contained in this e-mail message is privileged and confidential, and intended only for the use of the individual(s) and/or entity(ies) named above. If you are not the intended recipient, you are hereby notified that any unauthorized disclosure, copying, distribution or taking of any action in reliance of the contents of the e-mail materials is strictly prohibited and review by any individual other than the intended recipient shall not constitute waiver of the attorney/client privilege. If you have received this transmission in error, please immediately notify the Sender identified above by telephone to arrange for the return of the materials. Thank you.

> -------- Original Message --------
> Subject: Fwd: Notice of order on Case #190704102
> From: "Steven C. Feinstein" <feinsteinlawoffice@gmail.com>
> Date: Thu, December 26, 2019 4:20 pm
> To: John <jedwards@optimumlawgroup.com>, David Haislip <dhaislip@optimumlawgroup.com>, Joseph Lento <jdlento@optimumlawgroup.com>
>
> Again, I need you to have someone substitute on for my appearance.
>
> Please do this by the end of next week.
>
> Sent from my iPhone
>
> Begin forwarded message:
>
> > **From:** cp-efiling@courts.phila.gov
> > **Date:** December 26, 2019 at 4:10:46 PM EST
> > **To:** feinsteinlawoffice@gmail.com
> > **Subject: Notice of order on Case #190704102**
>
> > 
> > 
> >
> > Dear Steven C. Feinstein,
> >
> > A legal paper, which requires notice pursuant to Pa. R.C.P. 236 and/or

Case 2:19-cv-02222-ER Document 12 Filed 02/06/20 Page 19 of 45

Pa. R.C.P. 1307, has been entered by the Court in the following matter:

Caption:
BENEDETTO VS WATSON ETAL
Case Number: 190704102

Date of Entry on Docket:
December 23, 2019 10:11 am EDT/DST

Type of Legal Paper:
NOTICE GIVEN

You may retrieve the legal paper, and any related document(s), by copying and pasting the following web address(es) into your browser or by clicking the link(s) below to view the related documents(s). Each link represents a separate document entered in connection with this matter. Utilizing the link(s) below will only display the actual document(s). You will not be logged into the court's electronic filing system.

CLNGV_25.pdf
https://fjdefile.phila.gov/efsfjd/zk_ealib.open_doc?h=t7btcsTlwE4CD4Jk

THANK YOU,

ERIC FEDER
DEPUTY COURT ADMINISTRATOR
DIRECTOR, OFFICE OF JUDICIAL RECORDS

D I S C L A I M E R
-----------------------------------------------------------------
The First Judicial District will use your electronic mail address and other personal information only for purposes of Electronic Filing as authorized by Pa. R.C.P. 205.4 and Philadelphia Civil *Rule 205.4.

Use of the Electronic Filing System constitutes an acknowledgment that the user has read the Electronic Filing Rules and Disclaimer and agrees to comply with same.

-----------------------------------------------------------------

This is an automated e-mail, please do not respond!

EXHIBIT "E"

Gmail

**Steven Feinstein <feinsteinlawoffice@gmail.com>**

## Rosario

**Steven C. Feinstein** <feinsteinlawoffice@gmail.com> Fri, Dec 20, 2019 at 11:42 AM
To: John <jedwards@optimumlawgroup.com>, Joseph Lento <jdlento@optimumlawgroup.com>

There was a rule 16 conference in this case this morning. No one from Optimum showed. The will be dismissed.

Over 3 weeks no, no check, no breakdown of costs. You are still holding up my ability to finalize Guzzi and get you your share. Kindly send by end of business today. If I do not receive same I will advise defense counsel that you have waived your lien.
Sent from my iPhone

EXHIBIT “F”

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Eduardo Rosario,<br><br>Plaintiff<br>v.<br><br>Alex Torres Productions, Inc., et al.,<br><br>Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | CIVIL ACTION<br>NO. 19-2222 |

**ORDER**

**AND NOW**, this **13th** day of **January, 2020**, after a hearing in open court on December 20, 2019, with Alex Torres present, and neither Eduardo Rosario nor La Guira, Inc., present, it is hereby **ORDERED** that:

1. The Default (ECF No. 4) is **STRICKEN**;[1]
2. The Complaint (ECF No. 1) is **DISMISSED**;[2]
3. The Court retains jurisdiction for 90 days to consider referral of Steven C. Feinstein, Esq., and Joseph D. Lento, Esq., to the relevant disciplinary

---

[1] No evidence supporting entry of a default judgment was presented by Plaintiff at the hearing.

[2] The complaint is dismissed for failure to prosecute. Plaintiff's counsel of record failed to appear in person at the initial pretrial conference. He was contacted by telephone and represented to the Court that he was no longer plaintiff's counsel in this matter (a copy of the transcripts containing this representation is attached hereto). Judicial economy is advanced by dismissal of the case without prejudice so counsel of record can sort out the issue of Plaintiff's representation. Because this dismissal is without prejudice, the Court does not need to apply the Poulis factors before dismissing the case for failure to prosecute. Cf. Poulis v. State Farm Fire & Cas. Co., 747 F.2d 863, 868 (3d Cir. 1984) (requiring consideration of six factors before dismissing a case with prejudice due to noncompliance with a court order). If the complaint is refiled, it shall include legal authority for the proposition that a promoter may be held liable under the circumstances presented in this case.

board and to consider imposing monetary sanctions on Steven C. Feinstein, Esq., Joseph D. Lento, Esq., and Optimum Law Group, P.C., under Rule 11, 28 U.S.C. § 1927, and the Court's inherent power;[3]

4. A Rule is **ISSUED** for Steven C. Feinstein, Esq., Joseph D. Lento, Esq., and Optimum Law Group, P.C., to show cause, by **February 10, 2020**, why sanctions should not be imposed;
5. Steven C. Feinstein, Esq., is directed to withdraw his appearance for the plaintiff; and
6. Steven C. Feinstein, Esq., is directed to serve a copy of this Order on Joseph D. Lento, Esq., and Eduardo Rosario.

**AND IT IS SO ORDERED.**

***/s/ Eduardo C. Robreno***
**EDUARDO C. ROBRENO, J.**

[3] Plaintiff's counsel of record represented to the Court conduct which constitute prima facie violations of the Pennsylvania Rules of Professional Conduct and Rule 11 of the Federal Rules of Civil Procedure (a copy of the transcripts containing these representations is attached hereto).

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EDUARDO ROSARIO, | : | CIVIL CASE |
| | : | |
| Plaintiff(s) | : | Case No. 2:19-cv-02222-ER |
| | : | |
| v. | : | Philadelphia, Pennsylvania |
| | : | December 20, 2019 |
| ALEX TORRES PRODUCTIONS, INC, et al | : | Time 10:28 a.m. to 10:50 a.m. |
| | : | |
| Defendant(s) | : | |

. . . . . . . . . . . . . . .

TRANSCRIPT OF PRETRIAL CONFERENCE
BEFORE THE HONORABLE EDUARDO C. ROBERENO
UNITED STATES DISTRICT COURT JUDGE

APPEARANCES:

| | |
|---|---|
| For the Plaintiff(s): | Steven C. Feinstein<br>Feinstein Law Office<br>107 Wayne Court<br>West Chester, PA 19380 |
| For Defendant Name: | Alex Torres, Pro Se<br>Alex Torres Productions, Inc<br>651 Weybridge Court<br>Lake Mary, FL 32746<br>City, State Zip |
| Court Recorder: | Kenneth Duvak<br>Clerk's Office<br>U.S. District Court |
| Transcription Service: | Precise Transcripts<br>45 N. Broad Street<br>Ridgewood, NJ 07450 |

Proceedings recorded by electronic sound recording; transcript produced by transcription service.

(Proceedings started at 10:28 a.m.)

DEPUTY CLERK RONALD VANCE: All rise. The United States District Court for the Eastern District of Pennsylvania is now in session. The Honorable Eduardo C. Roberno presiding.

JUDGE EDUARDO C. ROBERNO: Good morning, please be seated.

ALEX TORRES: Good morning.

THE COURT: Okay. Is there anyone in the courtroom or on the phone on behalf of the plaintiff Rosario?

COUNSEL STEVEN FEINSTEIN: Your Honor this is Steve Feinstein. My appearance is entered for Mr. Rosario. When the complaint was filed in this case it was filed under the law firm of Optimum Law Group and on November 26th I left Optimum Law Group, I subsequently received a letter --

THE COURT: Hold - hold on a second. What's going on here Kenneth? There's - there's a phone ringing.

ESR KENNETH DUVAK: I think that’s on his end Judge. I think that’s a phone in his office ringing.

THE COURT: Oh okay. Is that a phone in your office Mr. Feinstein?

MR. FEINSTEIN: No, there's nothing ringing in my office.

THE COURT: Okay.

MR. FEINSTEIN: I do hear that but that not in my office.

THE COURT: Okay. Okay, well let's proceed.

MR. FEINSTEIN: Your Honor, as I was saying. I left Optimum Law Group on November 26th just before Thanksgiving and I received a letter from them indicating that I was not to communicate with any clients and not to do anything on behalf of any of their cases. I instructed them to substitute my appearance in on any of the cases that -- substitute the appearance from anything that I had. I'd also received a - a part of the exchange of the communications where -- that they were going to absolute change my credentials, my lobbying credentials, to prevent me from lobbying in. So, the first thing I did after - after I received that was go into all of the various places where I could find --

THE COURT: Now hold on a second. There is a ringing going on here.

MR. FEINSTEIN: Okay.

ESR: It's not coming in over there.

THE COURT: Okay, let's - let's proceed. Mr. Fein-

MR. FEINSTEIN: Yes, part of the communications that I received from them was a (indiscernible) to change

all of my lobbying credentials on all of the electronic filing notifications and jurisdictions, so I immediately went in and changed my - my passwords and all the contact information which is why it - it's still - it -- when - when I did that it automatically updated my appearance on any case that I was in and changed it to Feinstein - Feinstein Law Office as opposed to Optimum Law Group. But if you pull up the complaint that was filed, you'll see that it was filed under Optimum Law Group. They did receive notice of this hearing and I had no explanation to why they didn't send someone over. I apologize to the Court because obviously if I had known they weren't going to I would've been there. They have been specifically instructed to substitute my appearance in every case in which I was involved in an Optimum case. And, I will immediately file a petition to have my formal appearance withdrawn and I will put Optimum on notice of what happened this morning and let them know that, you know, I'm not very happy about what they did, as I'm sure you are not as well. So, again my apologies to the Court, I did know about this hearing, I did but as I said they were - they were advised of the hearing as well and they should've sent somebody, so.

THE COURT: Now, let me ask you this. When did this event happen that you were dismissed from Optimum or

Case 2:19-cv-03222-ER Document 12 Filed 01/16/20 Page 29 of 245

terminated?

MR. FEINSTEIN: Well actually I resigned from them on October -- on November 26th.

THE COURT: November 26th.

MR. FEINSTEIN: I have --

THE COURT: Okay.

MR. FEINSTEIN: November 26th. I've also just finished a two-week jury trial and this was, you know, my mind actually wasn't on, you know, my calendar but I have been communicating with them because they owe me money and they owe me information about cases that I - that I retained and they have -- they just stopped communicating with me and I asked them several times to substitute their appearance send (indiscernible) for my appearance, but.

THE COURT: Now, did you - did you - you drafted the complaint in this case?

MR. FEINSTEIN: I believe that I did. Yeah, I did. As a matter of fact I did based upon a sample that was provided to me by one of the paralegals at Optimum, but yes, I did draft the complaint.

THE COURT: Yeah, because it's signed by you.

MR. FEINSTEIN: Yeah.

THE COURT: And, there was - there was an issue of whether this promoter was in Florida -- was properly sued in this case and I'm looking to some law that would

Case 2:19-cv-02222-ER Document 12 Filed 02/06/20 Page 8 of 245

allow that to - to take place. Was there any research done here that would warrant suing a promoter an - an artist who performed?

MR. FEINSTEIN: I - I personally did not do any research with regard to that. The -- I believe that the sample complaint that I had was a similar set of circumstances and -- but the way I read the statute, when I did read the provisions of the statute I - I did read it to include that a promoter could be held responsible under these circumstances. I - I did 'cause I remember - I remember -- and this a long time ago through, gosh it was several months, and I remember reading this and the way I - I read it I - I thought that the statute was rather extensive and included people who were running promotions at the facility and that they were obligated to - to - to provide access to - to handicap people.

THE COURT: Do you have any - any case law that supports that interpretation?

MR. FEINSTEIN: No, I'm sorry do any specific research with regard to that.

THE COURT: Mm-hm. Okay. Well, who is the person at Optimum Law Group, who was the senior person there?

MR. FEINSTEIN: Well the managing attorney is - is a gentleman by the name of Joseph Lento.

THE COURT: Wisro?

MR. FEINSTEIN: Lento, L-E-N-T-O.

THE COURT: Okay, spell - spell it for us again.

MR. FEINSTEIN: L-E-N-T-O.

THE COURT: Oh, Lento.

MR. FEINSTEIN: I also (indiscernible) that he’s not admitted in the Eastern District.

THE COURT: Okay. Okay. Well, this -- Mr. Feinstein, I - I hope to say a learning lesson. When your name is on the complaint until your relief from that obligation, you are the lawyer of record. You can't tell --

MR. FEINSTEIN: You’re right sir, I was - I was not careful, I should have taken care of that.

THE COURT: Yeah.

MR. FEINSTEIN: I apologize.

THE COURT: Because you can't just tell somebody else, you know, I’m out of here you take care of it and rely upon that because we rely on the lawyer of record --

MR. FEINSTEIN: Yes.

THE COURT: We have - we have the defendant is here today and he had been inconvenienced by having to show up here when there's nobody here from the other side. And that’s --

MR. FEINSTEIN: Well, like I said, I apologize to

the Court and I apologize to Mr. Torres --

THE COURT: Yeah.

MR. FEINSTEIN: -- certainly no disrespect was intended. I, you know, this was -- it is my responsibility because my appearance is entered, but I genuinely thought somebody would be covering it from Optimum --

THE COURT: Right.

MR. FEINSTEIN: -- and I will make sure that my appearance is withdrawn, somebody else is subst- substituted in.

THE COURT: Yeah. Well, I think the solution to this problem is going to be that we're gonna start, if the Plaintiff wants, all over again. I'm gonna dismiss the case without prejudice and --

MR. FEINSTEIN: Okay.

THE COURT: -- I'm going to strike - I'm gonna strike the - the default and -- because no lawyer is really representing the Plaintiff in this case --

MR. FEINSTEIN: Okay.

THE COURT: And somebody's gonna have to come up with some cause of action that is supported by - by law. You're handed representation that you didn't do any research concerning bringing in a party to the case. Is from a (indiscernible) rule 11 sanctionable, but to the

extent --

MR. FEINSTEIN: But not -- Your Honor, with all due respect, if I viewed the statute as being extensive, I had a good faith basis for - for including that.

THE COURT: No. Okay, I - I didn't say it was, I said it was from a (indiscernible), okay, case.

MR. FEINSTEIN: Okay. Okay.

THE COURT: You don't have an explanation for it. So I don't know whether anybody's interested in pursuing this matter but I think that this is something that is troublesome -- now is Optimum Law have any other lawyers other than Mr. Lento?

MR. FEINSTEIN: I'm sorry what, I could understand --

THE COURT: Yeah. Are there any other lawyers in Optimum Law other than Mr. Lento?

MR. FEINSTEIN: Yes, there are several.

THE COURT: Okay.

MR. FEINSTEIN: But it's sort of a decentralized law firm and people -- it's really kind of a (indiscernible) who are operating under one letterhead --

THE COURT: I - I see.

MR. FEINSTEIN: But they're -- so they're individual counsels, it's not a traditional type law firm --

THE COURT: Okay.

MR. FEINSTEIN: -- where - where you go to a central location and -- we're all remote - remote people, well we were, but.

THE COURT: Now, 1615 South Broad, is that where -- let me see, you know, they're - they're located on 1500 Market Street.

MR. FEINSTEIN: Yeah, that - that - that is a virtual office. The primary - the primary office is located in New Jersey.

THE COURT: Yeah.

MR. FEINSTEIN: That's a virtual office, I - I -- the 1615 address, I'm not sure why it would've been in the complaint but that's law office of (indiscernible) Conrad Benedetto.

THE COURT: Yeah, right.

MR. FEINSTEIN: Not a member of Optimum but who had - who probably drafted the original complaint that was given to me as a sample. I -- if that address appears in the complaint it's probably a (indiscernible) error of some kind but I'm not sure since I don't have the complaint in front of me.

THE COURT: Well let's see, the complaint says 1500 Market Street and is - is signed by you.

MR. FEINSTEIN: Yes.

THE COURT: In - in there Mr. Benedetto's name is on the docket but is says he was terminated as of July 1, 2019.

MR. FEINSTEIN: Oh, you know what, that -- he just told me that.

THE COURT: Yeah.

MR. FEINSTEIN: Is my -- the first time I've heard that.

THE COURT: Yeah.

MR. FEINSTEIN: Mr. Benedetto refers cases to Optimum. I was given it to draft a complaint and - and - and - and to file suit in the case. I had no idea that the case had actually originated with Conrad or that maybe he had (indiscernible) 'cause when I filed it, I filed it as an original lawsuit with all the original cover sheets. There -- I don't have any idea why Conrad would've been on the docket. Do you want - do you want the -- the telephone number that's on the complaint is -- I do believe that holds through to (indiscernible) so --

THE COURT: Let's see - let's see what it says here, I think it has a 50 -- he has 267, which I guess is Philadelphia extensively, 833-0200.

MR. FEINSTEIN: Yes, got it. That went through to the New Jersey office.

THE COURT: Now, have you ever met Mr. Rosario?

MR. FEINSTEIN: Have I met Mr. -- I have not personally met Mr. Rosario.

THE COURT: Okay. Okay. Well --

MR. FEINSTEIN: The - the file's reviewed by others in Optimum --

THE COURT: Yeah.

MR. FEINSTEIN: -- and I was requested to file the complaint.

THE COURT: Yep. Okay, we are putting your - your name on it and - and you will have -- you have a license to protect so how long have you been practicing law?

MR. FEINSTEIN: Thirty-four years Your Honor.

THE COURT: Okay, so I think you - you know better Mr. Feinstein. This is -- your whole story, which I appreciate by the way, your candor, is very troubling.

MR. FEINSTEIN: All -- I understand Your Honor, it's one of the reasons why I'm no longer with Optimum.

THE COURT: Yeah.

MR. FEINSTEIN: I had significant concerns about the - some of the ethical things that were going on in that firm and there were other issues that - that were -- you know, I don't really want to get into it but there are very significant and specific reasons why I'm no longer with that firm. I, you know, and I'll be fully candid, I

graduated in - in '85', I - I previously had some -- a run in with the disciplinary board and I've been doing everything I possibly can to avoid every having to do that again. So, I do appreciate and understand everything that you're saying and that's part of the reason why I'm no longer with Optimum because I felt at various times that my license might be at risk based upon things that they were doing. So -- and again, I wasn't with them all that long. I started with them in, I think April, and it terminated in November because I just didn't like the way things were going down. But, in the meantime I do -- I just said -- I do appreciate your comments and I'm taking them to heart and nothing like this will ever happen again.

THE COURT: And you are in West Chester now, right?

MR. FEINSTEIN: Yeah, my office is - my personal office in West Chester, yeah. But actually you're talking to me on my cell phone so I'm not sitting --

THE COURT: Okay.

MR. FEINSTEIN: -- there right now, but that's where my office is.

THE COURT: At 107 Wayne Court, West Chester, Pennsylvania?

MR. FEINSTEIN: Yes.

THE COURT: Okay. Very good. I think we're going to terminate then your participation in this, I said is my intend then to dismiss the case and strike the default and --

MR. FEINSTEIN: Okay.

THE COURT: -- allow you to also -- I'm going to allow you to withdraw from the case.

MR. FEINSTEIN: Okay.

THE COURT: But in the way out of withdrawal you are to serve the copy of the order that I entered in the case upon the Optimum Law Group, PC. and --

MR. FEINSTEIN: I'll - I'll - I'll file - I'll file a copy -- I'll serve them with a copy of my petition and I'll serve them with any order.

THE COURT: And also the extent that you know Mr. Rosario's address, do you know that?

MR. FEINSTEIN: Let me see if I have that. Hold on. I have it as 2940 A Waldorf Avenue, Camden, New Jersey.

THE COURT: Okay. So, you are directed by the Court to serve Mr. Rosario as well as Optimum Law Group, PC --

MR. FEINSTEIN: Okay.

THE COURT: -- with a copy of the order that I'm going to enter in this case --

MR. FEINSTEIN: Okay.

THE COURT: -- and then they'll - they'll have to proceed which ever way they - they would like to. Okay, thank you Mr. Feinstein.

MR. FEINSTEIN: So -- okay, thank Your Honor I appreciate it.

THE COURT: Thank you.

MR. FEINSTEIN: Thank you.

THE COURT: Thank you. Okay, good morning. Sir, would I have your name?

MR. TORRES: Alex Torres.

THE COURT: Okay. Mr. Torres, let's see, you are the promoter for this --

MR. TORRES: Yes, sir.

THE COURT: Okay.

MR. TORRES: Yes, Your Honor.

THE COURT: Now - now you're from Florida?

MR. TORRES: Yes.

THE COURT: Okay, so you came up for this matter?

MR. TORRES: I drove, I've been driving for two days.

THE COURT: Okay. Well, what about the - the other defendant has - has the other defendant been served? La Guira?

MR. TORRES: Huh?

THE COURT: Right. Well no it says here default against La Guira. Okay, that was entered, right? Okay. Okay. Well -- but the hearing today was on -- okay Mr. Torres file and answer, La Guira has not appeared, right? Okay. Okay. Well, this is what we're going to do, we're gonna dismiss the case and we'll see where that goes from there. I think what you should do Mr. Torres, is leave your phone number --

MR. TORRES: Okay.

THE COURT: -- so that if we have further proceeding you may not necessarily have to come from Florida.

MR. TORRES: Thank you.

THE COURT: I think it's been a burden on you that is - is - is - is unfair burden on you to have you - have you drive up here and then there is no one here from the plaintiff's side. So, let me -- let's - let's go off the record here for a moment. The Court finds after hearing from counsel for the plaintiff in this case and hearing from defendant Alex Torres Production, Inc. that the case should be dismissed for failure to prosecute and the default that was entered against La Guira Inc. will be stricken and the matter may be terminated with the exception that the Court will retain jurisdiction to impose sanctions upon any of the lawyers who has

represented plaintiff in this case that is Optimum Law Group, PC, Feinstein Law Office and/or to refer these -- well including the reference of this matter to the disciplinary board for further action. So, you have any questions Mr. Torres?

MR. TORRES: Yes.

THE COURT: Yeah.

MR. TORRES: Does that mean they can sue me again?

THE COURT: They could if they wanted to, they could sue you again, yes. But we'll see where that goes.

MR. TORRES: Okay.

THE COURT: Yeah.

MR. TORRES: I was just asking because since it's not my building, was the first time I was there --

THE COURT: I understand that.

MR. TORRES: And I was, like, a little bit confused and.

THE COURT: I asked him that question.

MR. TORRES: So --

THE COURT: So it -- I asked him that question and I will ask put in the order that if you were to refile the -- if they were to refile this case they should provide some legal authority from the proposition that under these circumstances the promoter will bear some

Case 2:19-cv-02222-ER Document 12 Filed 01/13/20 Page 22 of 245

liability. As you heard him, his explanation is that he read statute but he didn't do any research that applied the statute to the facts of this case. Okay. Very good. Okay, thank you.

MR. TORRES: Thank you.

THE COURT: Hearing is adjourned.

MR. TORRES: Happy holidays to everyone.

THE COURT: Thank you.

(Court adjourned at 10:50 a.m.)

CERTIFICATE

I, Stephanie Garcia, court approved transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter.

January 6, 2020

Case 2:19-cv-02222-ER Document 12 Filed 02/06/20 Page 44 of 45

EXHIBIT "G"

 Case 2:19-cv-02222-ER Document 12 Filed 02/06/20 Page 45 of 45

**Steven Feinstein <feinsteinlawoffice@gmail.com>**

---

# Activity in Case 2:19-cv-02222-ER ROSARIO v. ALEX TORRES PRODUCTIONS, INC. et al Order to Show Cause

---

**Steven C. Feinstein** <feinsteinlawoffice@gmail.com> Mon, Jan 13, 2020 at 12:23 PM
To: Joseph Lento <jdlento@optimumlawgroup.com>

This is what happens when you fail to do what is right. If I am hit with sanctions I will look for you to pay them.

If you think I am kidding, try me.

Sent from my iPhone

Begin forwarded message:

> **From:** ecf_paed@paed.uscourts.gov
> **Date:** January 13, 2020 at 12:07:12 PM EST
> **To:** paedmail@paed.uscourts.gov
> **Subject: Activity in Case 2:19-cv-02222-ER ROSARIO v. ALEX TORRES PRODUCTIONS, INC. et al Order to Show Cause**
>
> [Quoted text hidden]

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EDUARDO ROSARIO, PLAINTIFF | : | CIVIL ACTION NO. 19-2222 |
| v. | : | |
| ALEX TORRES PRODUCTIONS, INC., ET AL., DEFENDANTS | : | |

**ANSWER OF THE RESPONDENT, JOSEPH D. LENTO, ESQUIRE TO THE JANUARY 13, 2020 RULE TO SHOW CAUSE**

The Respondent, Joseph D. Lento, Esquire, hereby answers the January 13, 2020 Rule to Show Cause as follows:

1. By Order dated January 13, 2020, this Honorable Court issued a Rule to Show Cause on Attorney Joseph Lento, why he should not be sanctioned under the Federal Rules of Civil Procedure, Rule 11 and 28 U.S.C.A. 1927, and the Court's inherent powers. Attached and marked as Exhibit "A" is a copy of the Rule to Show Cause issued by this Honorable Court.

2. A brief history is now necessary to properly respond. Eduardo Rosario hired the Optimum Law Group, Inc. Attorney Steven C. Feinstein, who worked for the Optimum Law Group, agreed to and was assigned to represent Eduardo Rosario. Mr. Feinstein filed the Complaint. Mr. Feinstein is admitted to practice law in the United States District Court for the Eastern District of Pennsylvania. The underlying Complaint alleged a violation of the Americans With Disability Act with respect to a

comedy performance that took place on February 10, 2019 at the Red Wine Restaurant, and the event was allegedly promoted and managed by Alex Torres Productions, Inc., d/b/a Red Wine Restaurant.

On January 1, 2020, Optimum Law Group changed its name to Lento Law Group, PC, to comply with New Jersey regulations. Joseph Lento is the Principal in the Lento Law Group, previously known as the Optimum Law Group. Mr. Lento is not licensed to practice law in the United States District Court for the Eastern District of Pennsylvania. Mr. Lento is licensed in the Commonwealth of Pennsylvania. That is why the Optimum Law Group retained the services of Attorney Steven C. Feinstein to represent Mr. Rosario.

By email dated November 12, 2019, Attorney Feinstein confirmed with the Optimum Law Group's office manager, pursuant to an email, that there was a December 20, 2019 hearing, which he would be attending. Mr. Feinstein made no reference to withdrawing from the case in that email.

Attorney Joseph Lento and the Optimum Law Group were under the impression that Attorney Feinstein would be present at the December 20, 2019 hearing because he was the attorney of record. This Honorable Court did hold a hearing on December 20, 2019, and dismissed the Complaint without prejudice and struck the default judgment. Unfortunately, Attorney Feinstein did not

appear and had to be telephoned. Pursuant to the notes of
testimony, Attorney Steven Feinstein, who no longer works for
Mr. Lento or the Optimum Law Group, appeared by telephone on
behalf of the Plaintiff at the December 20, 2019 hearing. Mr.
Feinstein told the Court that he had left the Optimum Law Group
at the end of November. Mr. Feinstein did not notify Mr. Lento
or the Optimum Law Group that he was not appearing on behalf of
the Plaintiff, Mr. Rosario, and would not be present. If he had,
another attorney would have been retained.

Mr. Lento respectfully contends that sanctions should not
be entered against him since he was not aware of the need to
appear on December 20, 2019 since Mr. Feinstein did not tell
him, and Mr. Feinstein was still the attorney of record. Mr.
Feinstein was the attorney who drafted the Complaint, as seen
from page 5 of the notes of testimony. Surprisingly, Mr.
Feinstein indicated he did not do any research as to the
liability in this case. He only indicated he did a statutory
review, and thought the statutory language would include the
promoter, who would be responsible. At the hearing on December
20, 2019, Mr. Feinstein indicated Attorney Joseph Lento was the
managing attorney for the Optimum Group, but stated that Mr.
Lento was not admitted in the United States District Court for
the Eastern District of Pennsylvania. Mr. Feinstein fully

admitted and apologized for not appearing initially (he had to be called by telephone).

This Honorable Court, at the December 20, 2019 hearing, stated one of the solutions to the problem would be to withdraw the Complaint and have the Plaintiff start all over again. This Court then struck the Complaint and the default judgment (see notes of testimony, pages 7-9).

Mr. Feinstein advised the Court that he had acted in good faith since he viewed the statutes at issue as being extensive and he had a good faith basis for including the promoter (see notes of testimony, page 9). Mr. Feinstein's stated, surprisingly, he had never met the Plaintiff, Mr. Rosario (see notes of testimony, page 12). Mr. Feinstein is a very experienced lawyer and has been practicing law for 34 years. Therefore, he clearly was aware of his duties to Mr. Rosario. This Honorable Court then allowed Mr. Feinstein to withdraw from the case (see notes of testimony, page 14). During the hearing, this Honorable Court indicated it would retain jurisdiction to impose sanctions upon lawyers who had represented the Plaintiff in this case, that is the Optimum Law Group (see notes of testimony, pages 16, 17). The Court indicated it would want legal authority if a new lawsuit was to be filed (see notes of testimony, page 18). Attached and marked as Exhibit "B" is a transcript of the December 20, 2019 hearing.

3. Joseph D. Lento, on behalf of Optimum Law Group, disagrees with some of the statements made by Attorney Feinstein during the December 20, 2019 hearing. Attached and marked as Exhibit "C" is the November 12, 2019 email referred to by Attorney Feinstein. This was a communication between Attorney Feinstein and the Lento Law Group office manager. A review of that email shows a discussion back and forth about filing discovery and perhaps filing a default. The email ends when Attorney Feinstein tells the Office Manager that he'll discuss the lack of discovery and all the issues at the December 20th conference (see Exhibit "C"). There was never any other communication by Attorney Feinstein to either Attorney Lento or to the Optimum Law Group, which is now the Lento Law Group, that he would not appear at the December 20, 2019 conference. At the end of November, Mr. Feinstein was terminated from the Optimum Law Group. But, he never reminded Mr. Lento of the December 20, 2019 hearing. Mr. Lento believed Mr. Feinstein would cooperate in an orderly transition. Mr. Feinstein had not withdrawn his representation at the time of the December 20, 2019 hearing. Mr. Lento and Optimum Law Group assumed Mr. Feinstein would appear since he was the attorney of record. Mr. Feinstein never told anyone, including Mr. Lento, that he would not appear.

4. It appears that Attorney and Optimum Law Group should not be the subject of sanctions. At all times, they relied on

Mr. Feinstein, who was retained by them to represent Mr.
Rosario. Mr. Feinstein filed the Complaint and assured them
there was a cause of action. Mr. Feinstein never said he would
not appear, and Mr. Feinstein took no steps to withdraw as
counsel. Mr. Feinstein did not advise Mr. Lento that he would
not appear and did not remind Mr. Lento of the December 20, 2019
conference date. Mr. Lento was assuming Mr. Feinstein would
cooperate in an orderly transition of the file. Therefore,
Attorney Lento and Optimum Law Group did not intentionally not
appear. Attorney Lento and Optimum Law Group were under the
impression Mr. Feinstein would appear and handle an orderly
transition. Attorney Lento was not licensed in the Eastern
District of Pennsylvania and could not have entered his
appearance or appeared. Therefore, it appears that the Rule to
Show Cause should be dismissed against Attorney Lento and
Optimum Law Group for all of those reasons.

     5.    On the issue of whether there was a good faith basis
to file the Complaint, Mr. Lento and Optimum Law Group relied on
Attorney Feinstein. If Optimum Law Group and Mr. Lento decide to
refile the Complaint, they will provide a legal basis to justify
why they believe there would be a viable cause of action. If
after reviewing the law, they conclude there is not, then no
further Complaint will be filed. But, at this point, there is no
basis to sanction Attorney Lento since he had hired Attorney

Case 2:19-cv-02222-ER Document 14 Filed 02/10/20 Page 7 of 9

Feinstein and paid him to represent Mr. Rosario, and to file the Complaint and proceed with the matter. Attorney Lento relied on Mr. Feinstein. Attorney Lento was not aware that Mr. Feinstein was not appearing at the December 20, 2019 hearing. Attorney Lento expected Mr. Feinstein to work an orderly transition and to advise him if he was not going to appear.

6. In conclusion, Mr. Lento respectfully requests that no sanctions should be entered against him or his law office for the above stated reasons.

Respectfully submitted,

*s/Samuel C. Stretton*

Samuel C. Stretton, Esquire
Attorney for Respondent,
Joseph D. Lento
103 S. High St., P.O. Box 3231
West Chester, PA 19381-3231
(610) 696-4243
Attorney I.D. No. 18491

Case 2:19-cv-02222-ER Document 14 Filed 02/10/20 Page 8 of 9

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EDUARDO ROSARIO, PLAINTIFF | : CIVIL ACTION : NO. 19-2222 |
| v. | : |
| ALEX TORRES PRODUCTIONS, INC., ET AL., DEFENDANTS | : |

**CERTIFICATE OF SERVICE**

I hereby certify I am this date serving a copy of the Answer to the Rule to Show Cause of the Respondent, Joseph D. Lento, Esquire, in the captioned matter upon the following persons in the manner indicated below.

Service by First Class Mail addressed as follows:

1. Honorable Eduardo C. Robreno
   Senior Judge
   United States District Court for the
   Eastern District of Pennsylvania
   601 Market Street, Room 15614
   Philadelphia, PA 19106-1705

2. Alex Torres, Pro Se
   Alex Torres Productions, Inc.
   651 Weybridge Court
   Lake Mary, FL 32746

3. Steven C. Feinstein, Esquire
   Feinstein Law Office
   107 Wayne Court
   West Chester, PA 19380
   Attorney for Plaintiff, Eduardo Rosario

4. Eduardo Rosario
   2940A Waldorf Avenue
   Camden, NJ 08105

Case 2:19-cv-02222-ER Document 14 Filed 02/10/20 Page 9 of 9

5. Joseph D. Lento, Esquire
Lento Law Firm
1500 Walnut Street, Suite 500
Philadelphia, PA 19102

Respectfully submitted,

*February 10, 2020*
Date

*s/Samuel C. Stretton*
Samuel C. Stretton, Esquire
Attorney for Respondent,
Joseph D. Lento, Esq.
103 S. High Street
P.O. Box 3231
West Chester, PA 19381
(610) 696-4243
Attorney I.D. No. 18491

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Eduardo Rosario, Plaintiff v. Alex Torres Productions, Inc., et al., Defendants. | : | CIVIL ACTION NO. 19-2222 |

**ORDER**

**AND NOW**, this **13th** day of **January, 2020**, after a hearing in open court on December 20, 2019, with Alex Torres present, and neither Eduardo Rosario nor La Guira, Inc., present, it is hereby **ORDERED** that:

1. The Default (ECF No. 4) is **STRICKEN**;[1]
2. The Complaint (ECF No. 1) is **DISMISSED**;[2]
3. The Court retains jurisdiction for 90 days to consider referral of Steven C. Feinstein, Esq., and Joseph D. Lento, Esq., to the relevant disciplinary

---

[1] No evidence supporting entry of a default judgment was presented by Plaintiff at the hearing.

[2] The complaint is dismissed for failure to prosecute. Plaintiff's counsel of record failed to appear in person at the initial pretrial conference. He was contacted by telephone and represented to the Court that he was no longer plaintiff's counsel in this matter (a copy of the transcripts containing this representation is attached hereto). Judicial economy is advanced by dismissal of the case without prejudice so counsel of record can sort out the issue of Plaintiff's representation. Because this dismissal is without prejudice, the Court does not need to apply the Poulis factors before dismissing the case for failure to prosecute. Cf. Poulis v. State Farm Fire & Cas. Co., 747 F.2d 863, 868 (3d Cir. 1984) (requiring consideration of six factors before dismissing a case with prejudice due to noncompliance with a court order). If the complaint is refiled, it shall include legal authority for the proposition that a promoter may be held liable under the circumstances presented in this case.

Exhibit "A"

Case 2:19-cv-02222-ER Document 14-1 Filed 02/10/20 Page 2 of 29

board and to consider imposing monetary sanctions on Steven C. Feinstein, Esq., Joseph D. Lento, Esq., and Optimum Law Group, P.C., under Rule 11, 28 U.S.C. § 1927, and the Court's inherent power;[3]

4. A Rule is **ISSUED** for Steven C. Feinstein, Esq., Joseph D. Lento, Esq., and Optimum Law Group, P.C., to show cause, by **February 10, 2020**, why sanctions should not be imposed;

5. Steven C. Feinstein, Esq., is directed to withdraw his appearance for the plaintiff; and

6. Steven C. Feinstein, Esq., is directed to serve a copy of this Order on Joseph D. Lento, Esq., and Eduardo Rosario.

**AND IT IS SO ORDERED.**

*/s/ Eduardo C. Robreno*
**EDUARDO C. ROBRENO, J.**

---

[3] Plaintiff's counsel of record represented to the Court conduct which constitute prima facie violations of the Pennsylvania Rules of Professional Conduct and Rule 11 of the Federal Rules of Civil Procedure (a copy of the transcripts containing these representations is attached hereto).

Case 2:19-cv-02222-ER Document 14-2 Filed 02/10/20 Page 1 of 19

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EDUARDO ROSARIO, | : | CIVIL CASE |
| | : | |
| Plaintiff(s) | : | Case No. 2:19-cv-02222-ER |
| | : | |
| v. | : | Philadelphia, Pennsylvania |
| | : | December 20, 2019 |
| ALEX TORRES PRODUCTIONS, INC, et al | : | Time 10:28 a.m. to 10:50 a.m. |
| | : | |
| Defendant(s) | : | |

. . . . . . . . . . . . . .

TRANSCRIPT OF PRETRIAL CONFERENCE
BEFORE THE HONORABLE EDUARDO C. ROBERENO
UNITED STATES DISTRICT COURT JUDGE

APPEARANCES:

For the Plaintiff(s): Steven C. Feinstein
Feinstein Law Office
107 Wayne Court
West Chester, PA 19380

For Defendant Name: Alex Torres, Pro Se
Alex Torres Productions, Inc
651 Weybridge Court
Lake Mary, FL 32746
City, State Zip

Court Recorder: Kenneth Duvak
Clerk's Office
U.S. District Court

Transcription Service: Precise Transcripts
45 N. Broad Street
Ridgewood, NJ 07450

Proceedings recorded by electronic sound recording; transcript produced by transcription service.

Exhibit "B"

Case 2:19-cv-02222-ER Document 14-2 Filed 02/10/20 Page 2 of 119

(Proceedings started at 10:28 a.m.)

DEPUTY CLERK RONALD VANCE: All rise. The United States District Court for the Eastern District of Pennsylvania is now in session. The Honorable Eduardo C. Roberno presiding.

JUDGE EDUARDO C. ROBERNO: Good morning, please be seated.

ALEX TORRES: Good morning.

THE COURT: Okay. Is there anyone in the courtroom or on the phone on behalf of the plaintiff Rosario?

COUNSEL STEVEN FEINSTEIN: Your Honor this is Steve Feinstein. My appearance is entered for Mr. Rosario. When the complaint was filed in this case it was filed under the law firm of Optimum Law Group and on November 26th I left Optimum Law Group, I subsequently received a letter --

THE COURT: Hold - hold on a second. What's going on here Kenneth? There's - there's a phone ringing.

ESR KENNETH DUVAK: I think that's on his end Judge. I think that's a phone in his office ringing.

THE COURT: Oh okay. Is that a phone in your office Mr. Feinstein?

MR. FEINSTEIN: No, there's nothing ringing in my office.

THE COURT: Okay.

MR. FEINSTEIN: I do hear that but that not in my office.

THE COURT: Okay. Okay, well let's proceed.

MR. FEINSTEIN: Your Honor, as I was saying. I left Optimum Law Group on November 26th just before Thanksgiving and I received a letter from them indicating that I was not to communicate with any clients and not to do anything on behalf of any of their cases. I instructed them to substitute my appearance in on any of the cases that -- substitute the appearance from anything that I had. I'd also received a - a part of the exchange of the communications where -- that they were going to absolute change my credentials, my lobbying credentials, to prevent me from lobbying in. So, the first thing I did after - after I received that was go into all of the various places where I could find --

THE COURT: Now hold on a second. There is a ringing going on here.

MR. FEINSTEIN: Okay.

ESR: It's not coming in over there.

THE COURT: Okay, let's - let's proceed. Mr. Fein-

MR. FEINSTEIN: Yes, part of the communications that I received from them was a (indiscernible) to change

Case 2:19-cv-02222-ER Document 14-2 Filed 02/10/20 Page 4 of 19

all of my lobbying credentials on all of the electronic filing notifications and jurisdictions, so I immediately went in and changed my - my passwords and all the contact information which is why it - it's still - it -- when - when I did that it automatically updated my appearance on any case that I was in and changed it to Feinstein - Feinstein Law Office as opposed to Optimum Law Group. But if you pull up the complaint that was filed, you'll see that it was filed under Optimum Law Group. They did receive notice of this hearing and I had no explanation to why they didn't send someone over. I apologize to the Court because obviously if I had known they weren't going to I would've been there. They have been specifically instructed to substitute my appearance in every case in which I was involved in an Optimum case. And, I will immediately file a petition to have my formal appearance withdrawn and I will put Optimum on notice of what happened this morning and let them know that, you know, I'm not very happy about what they did, as I'm sure you are not as well. So, again my apologies to the Court, I did know about this hearing, I did but as I said they were - they were advised of the hearing as well and they should've sent somebody, so.

THE COURT: Now, let me ask you this. When did this event happen that you were dismissed from Optimum or

terminated?

MR. FEINSTEIN: Well actually I resigned from them on October -- on November 26th.

THE COURT: November 26th.

MR. FEINSTEIN: I have --

THE COURT: Okay.

MR. FEINSTEIN: November 26th. I've also just finished a two-week jury trial and this was, you know, my mind actually wasn't on, you know, my calendar but I have been communicating with them because they owe me money and they owe me information about cases that I - that I retained and they have -- they just stopped communicating with me and I asked them several times to substitute their appearance send (indiscernible) for my appearance, but.

THE COURT: Now, did you - did you - you drafted the complaint in this case?

MR. FEINSTEIN: I believe that I did. Yeah, I did. As a matter of fact I did based upon a sample that was provided to me by one of the paralegals at Optimum, but yes, I did draft the complaint.

THE COURT: Yeah, because it's signed by you.

MR. FEINSTEIN: Yeah.

THE COURT: And, there was - there was an issue of whether this promoter was in Florida -- was properly sued in this case and I'm looking to some law that would

Case 2:19-cv-02222-ER Document 9 Filed 01/13/20 Page 8 of 21

allow that to - to take place. Was there any research done here that would warrant suing a promoter an - an artist who performed?

MR. FEINSTEIN: I - I personally did not do any research with regard to that. The -- I believe that the sample complaint that I had was a similar set of circumstances and -- but the way I read the statute, when I did read the provisions of the statute I - I did read it to include that a promoter could be held responsible under these circumstances. I - I did 'cause I remember - I remember -- and this a long time ago through, gosh it was several months, and I remember reading this and the way I - I read it I - I thought that the statute was rather extensive and included people who were running promotions at the facility and that they were obligated to - to - to provide access to - to handicap people.

THE COURT: Do you have any - any case law that supports that interpretation?

MR. FEINSTEIN: No, I'm sorry do any specific research with regard to that.

THE COURT: Mm-hm. Okay. Well, who is the person at Optimum Law Group, who was the senior person there?

MR. FEINSTEIN: Well the managing attorney is - is a gentleman by the name of Joseph Lento.

THE COURT: Wisro?

MR. FEINSTEIN: Lento, L-E-N-T-O.

THE COURT: Okay, spell - spell it for us again.

MR. FEINSTEIN: L-E-N-T-O.

THE COURT: Oh, Lento.

MR. FEINSTEIN: I also (indiscernible) that he's not admitted in the Eastern District.

THE COURT: Okay. Okay. Well, this -- Mr. Feinstein, I - I hope to say a learning lesson. When your name is on the complaint until your relief from that obligation, you are the lawyer of record. You can't tell --

MR. FEINSTEIN: You're right sir, I was - I was not careful, I should have taken care of that.

THE COURT: Yeah.

MR. FEINSTEIN: I apologize.

THE COURT: Because you can't just tell somebody else, you know, I'm out of here you take care of it and rely upon that because we rely on the lawyer of record --

MR. FEINSTEIN: Yes.

THE COURT: We have - we have the defendant is here today and he had been inconvenienced by having to show up here when there's nobody here from the other side. And that's --

MR. FEINSTEIN: Well, like I said, I apologize to

the Court and I apologize to Mr. Torres --

THE COURT: Yeah.

MR. FEINSTEIN: -- certainly no disrespect was intended. I, you know, this was -- it is my responsibility because my appearance is entered, but I genuinely thought somebody would be covering it from Optimum --

THE COURT: Right.

MR. FEINSTEIN: -- and I will make sure that my appearance is withdrawn, somebody else is subst- substituted in.

THE COURT: Yeah. Well, I think the solution to this problem is going to be that we're gonna start, if the Plaintiff wants, all over again. I'm gonna dismiss the case without prejudice and --

MR. FEINSTEIN: Okay.

THE COURT: -- I'm going to strike - I'm gonna strike the - the default and -- because no lawyer is really representing the Plaintiff in this case --

MR. FEINSTEIN: Okay.

THE COURT: And somebody's gonna have to come up with some cause of action that is supported by - by law. You're handed representation that you didn't do any research concerning bringing in a party to the case. Is from a (indiscernible) rule 11 sanctionable, but to the

Case 2:19-cv-02222-ER Document 14-2 Filed 02/10/20 Page 9 of 19

extent --

MR. FEINSTEIN: But not -- Your Honor, with all due respect, if I viewed the statute as being extensive, I had a good faith basis for - for including that.

THE COURT: No. Okay, I - I didn't say it was, I said it was from a (indiscernible), okay, case.

MR. FEINSTEIN: Okay. Okay.

THE COURT: You don't have an explanation for it. So I don't know whether anybody's interested in pursuing this matter but I think that this is something that is troublesome -- now is Optimum Law have any other lawyers other than Mr. Lento?

MR. FEINSTEIN: I'm sorry what, I could understand --

THE COURT: Yeah. Are there any other lawyers in Optimum Law other than Mr. Lento?

MR. FEINSTEIN: Yes, there are several.

THE COURT: Okay.

MR. FEINSTEIN: But it's sort of a decentralized law firm and people -- it's really kind of a (indiscernible) who are operating under one letterhead --

THE COURT: I - I see.

MR. FEINSTEIN: But they're -- so they're individual counsels, it's not a traditional type law firm --

THE COURT: Okay.

MR. FEINSTEIN: -- where - where you go to a central location and -- we're all remote - remote people, well we were, but.

THE COURT: Now, 1615 South Broad, is that where -- let me see, you know, they're - they're located on 1500 Market Street.

MR. FEINSTEIN: Yeah, that - that - that is a virtual office. The primary - the primary office is located in New Jersey.

THE COURT: Yeah.

MR. FEINSTEIN: That's a virtual office, I - I -- the 1615 address, I'm not sure why it would've been in the complaint but that's law office of (indiscernible) Conrad Benedetto.

THE COURT: Yeah, right.

MR. FEINSTEIN: Not a member of Optimum but who had - who probably drafted the original complaint that was given to me as a sample. I -- if that address appears in the complaint it's probably a (indiscernible) error of some kind but I'm not sure since I don't have the complaint in front of me.

THE COURT: Well let's see, the complaint says 1500 Market Street and is - is signed by you.

MR. FEINSTEIN: Yes.

THE COURT: In - in there Mr. Benedetto's name is on the docket but is says he was terminated as of July 1, 2019.

MR. FEINSTEIN: Oh, you know what, that -- he just told me that.

THE COURT: Yeah.

MR. FEINSTEIN: Is my -- the first time I've heard that.

THE COURT: Yeah.

MR. FEINSTEIN: Mr. Benedetto refers cases to Optimum. I was given it to draft a complaint and - and - and - and to file suit in the case. I had no idea that the case had actually originated with Conrad or that maybe he had (indiscernible) 'cause when I filed it, I filed it as an original lawsuit with all the original cover sheets. There -- I don't have any idea why Conrad would've been on the docket. Do you want - do you want the -- the telephone number that's on the complaint is -- I do believe that holds through to (indiscernible) so --

THE COURT: Let's see - let's see what it says here, I think it has a 50 -- he has 267, which I guess is Philadelphia extensively, 833-0200.

MR. FEINSTEIN: Yes, got it. That went through to the New Jersey office.

THE COURT: Now, have you ever met Mr. Rosario?

MR. FEINSTEIN: Have I met Mr. -- I have not personally met Mr. Rosario.

THE COURT: Okay. Okay. Well --

MR. FEINSTEIN: The - the file's reviewed by others in Optimum --

THE COURT: Yeah.

MR. FEINSTEIN: -- and I was requested to file the complaint.

THE COURT: Yep. Okay, we are putting your - your name on it and - and you will have -- you have a license to protect so how long have you been practicing law?

MR. FEINSTEIN: Thirty-four years Your Honor.

THE COURT: Okay, so I think you - you know better Mr. Feinstein. This is -- your whole story, which I appreciate by the way, your candor, is very troubling.

MR. FEINSTEIN: All -- I understand Your Honor, it's one of the reasons why I'm no longer with Optimum.

THE COURT: Yeah.

MR. FEINSTEIN: I had significant concerns about the - some of the ethical things that were going on in that firm and there were other issues that - that were -- you know, I don't really want to get into it but there are very significant and specific reasons why I'm no longer with that firm. I, you know, and I'll be fully candid, I

graduated in - in '85', I - I previously had some -- a run in with the disciplinary board and I've been doing everything I possibly can to avoid every having to do that again. So, I do appreciate and understand everything that you're saying and that's part of the reason why I'm no longer with Optimum because I felt at various times that my license might be at risk based upon things that they were doing. So -- and again, I wasn't with them all that long. I started with them in, I think April, and it terminated in November because I just didn't like the way things were going down. But, in the meantime I do -- I just said -- I do appreciate your comments and I'm taking them to heart and nothing like this will ever happen again.

THE COURT: And you are in West Chester now, right?

MR. FEINSTEIN: Yeah, my office is - my personal office in West Chester, yeah. But actually you're talking to me on my cell phone so I'm not sitting --

THE COURT: Okay.

MR. FEINSTEIN: -- there right now, but that's where my office is.

THE COURT: At 107 Wayne Court, West Chester, Pennsylvania?

MR. FEINSTEIN: Yes.

Case 2:19-cv-02222-ER Document 14-2 Filed 02/10/20 Page 14 of 119

THE COURT: Okay. Very good. I think we're going to terminate then your participation in this, I said is my intend then to dismiss the case and strike the default and --

MR. FEINSTEIN: Okay.

THE COURT: -- allow you to also -- I'm going to allow you to withdraw from the case.

MR. FEINSTEIN: Okay.

THE COURT: But in the way out of withdrawal you are to serve the copy of the order that I entered in the case upon the Optimum Law Group, PC. and --

MR. FEINSTEIN: I'll - I'll - I'll file - I'll file a copy -- I'll serve them with a copy of my petition and I'll serve them with any order.

THE COURT: And also the extent that you know Mr. Rosario's address, do you know that?

MR. FEINSTEIN: Let me see if I have that. Hold on. I have it as 2940 A Waldorf Avenue, Camden, New Jersey.

THE COURT: Okay. So, you are directed by the Court to serve Mr. Rosario as well as Optimum Law Group, PC --

MR. FEINSTEIN: Okay.

THE COURT: -- with a copy of the order that I'm going to enter in this case --

Case 2:19-cv-02222-ER Document 14-2 Filed 02/10/20 Page 15 of 19

MR. FEINSTEIN: Okay.

THE COURT: -- and then they'll - they'll have to proceed which ever way they - they would like to. Okay, thank you Mr. Feinstein.

MR. FEINSTEIN: So -- okay, thank Your Honor I appreciate it.

THE COURT: Thank you.

MR. FEINSTEIN: Thank you.

THE COURT: Thank you. Okay, good morning. Sir, would I have your name?

MR. TORRES: Alex Torres.

THE COURT: Okay. Mr. Torres, let's see, you are the promoter for this --

MR. TORRES: Yes, sir.

THE COURT: Okay.

MR. TORRES: Yes, Your Honor.

THE COURT: Now - now you're from Florida?

MR. TORRES: Yes.

THE COURT: Okay, so you came up for this matter?

MR. TORRES: I drove, I've been driving for two days.

THE COURT: Okay. Well, what about the - the other defendant has - has the other defendant been served? La Guira?

MR. TORRES: Huh?

THE COURT: Right. Well no it says here default against La Guira. Okay, that was entered, right? Okay. Okay. Well -- but the hearing today was on -- okay Mr. Torres file and answer, La Guira has not appeared, right? Okay. Okay. Well, this is what we're going to do, we're gonna dismiss the case and we'll see where that goes from there. I think what you should do Mr. Torres, is leave your phone number --

MR. TORRES: Okay.

THE COURT: -- so that if we have further proceeding you may not necessarily have to come from Florida.

MR. TORRES: Thank you.

THE COURT: I think it's been a burden on you that is - is - is - is unfair burden on you to have you - have you drive up here and then there is no one here from the plaintiff's side. So, let me -- let's - let's go off the record here for a moment. The Court finds after hearing from counsel for the plaintiff in this case and hearing from defendant Alex Torres Production, Inc. that the case should be dismissed for failure to prosecute and the default that was entered against La Guira Inc. will be stricken and the matter may be terminated with the exception that the Court will retain jurisdiction to impose sanctions upon any of the lawyers who has

represented plaintiff in this case that is Optimum Law Group, PC, Feinstein Law Office and/or to refer these -- well including the reference of this matter to the disciplinary board for further action. So, you have any questions Mr. Torres?

MR. TORRES: Yes.

THE COURT: Yeah.

MR. TORRES: Does that mean they can sue me again?

THE COURT: They could if they wanted to, they could sue you again, yes. But we'll see where that goes.

MR. TORRES: Okay.

THE COURT: Yeah.

MR. TORRES: I was just asking because since it's not my building, was the first time I was there --

THE COURT: I understand that.

MR. TORRES: And I was, like, a little bit confused and.

THE COURT: I asked him that question.

MR. TORRES: So --

THE COURT: So it -- I asked him that question and I will ask put in the order that if you were to refile the -- if they were to refile this case they should provide some legal authority from the proposition that under these circumstances the promoter will bear some

Case 2:19-cv-02222-ER Document 14-2 Filed 02/10/20 Page 18 of 19

liability. As you heard him, his explanation is that he read statute but he didn't do any research that applied the statute to the facts of this case. Okay. Very good. Okay, thank you.

MR. TORRES: Thank you.

THE COURT: Hearing is adjourned.

MR. TORRES: Happy holidays to everyone.

THE COURT: Thank you.

(Court adjourned at 10:50 a.m.)

Case 2:19-cv-02222-ER Document 14-2 Filed 02/10/20 Page 19 of 19

CERTIFICATE

I, Stephanie Garcia, court approved transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter.

January 6, 2020

Case 2:19-cv-02222-ER Document 14-3 Filed 02/10/20 Page 1 of 3

**From:** jedwards@optimumlawgroup.com
**To:** Rook Ringer
**Subject:** [FWD: Re: Rosario]
**Date:** Wednesday, February 5, 2020 2:58:24 PM
**Attachments:** top.letterhead

---

**J. Edwards**
Office Manager
Lento Law Group, P.C.
3000 Atrium Way - Suite # 200
Mt. Laurel, NJ 08054
856-652-2000 - Office
856-375-1010 - Fax
www.lentolawgroup.com

CONFIDENTIALITY NOTICE: The information contained in this e-mail message is privileged and confidential, and intended only for the use of the individual(s) and/or entity(ies) named above. If you are not the intended recipient, you are hereby notified that any unauthorized disclosure, copying, distribution or taking of any action in reliance of the contents of the e-mail materials is strictly prohibited and review by any individual other than the intended recipient shall not constitute waiver of the attorney/client privilege. If you have received this transmission in error, please immediately notify the Sender identified above by telephone to arrange for the return of the materials. Thank you.

> -------- Original Message --------
> Subject: Re: Rosario
> From: Steven Feinstein <scf97@hotmail.com>
> Date: Tue, November 12, 2019 6:31 pm
> To: "jedwards@optimumlawgroup.com" <jedwards@optimumlawgroup.com>
>
> No. Will discuss it at the conference.
>
> Sent from my iPhone
>
>> On Nov 12, 2019, at 6:30 PM, "jedwards@optimumlawgroup.com" <jedwards@optimumlawgroup.com> wrote:
>>
>> <left.letterhead> OK, should we write to the court and advise of the Discovery delinquency and ask to file a Motion to Compel?
>>
>> We should have default against the establishment
>>
>> **J. Edwards**
>> Office Manager
>> Optimum Law Group, P.C.
>> 3000 Atrium Way - Suite # 200
>> Mt. Laurel, NJ 08054
>> 856-652-2000 - Office
>> 856-375-1010 - Fax
>> www.Optimumlawgroup.com
>>
>> CONFIDENTIALITY NOTICE: The information contained in this e-mail message is privileged and confidential, and intended only for the use of the individual(s) and/or entity(ies) named above. If you are not the intended recipient, you are hereby notified that any unauthorized disclosure, copying, distribution or taking of any action in reliance of the contents of the e-mail materials is strictly prohibited and review by any individual other than the intended recipient shall not constitute waiver of the attorney/client privilege. If you have received this transmission in error, please immediately notify the Sender identified above by telephone to arrange for the return of the materials. Thank you.
>>
>>> -------- Original Message --------
>>> Subject: Re: Rosario
>>> From: Steven Feinstein <scf97@hotmail.com>
>>> Date: Tue, November 12, 2019 6:28 pm
>>> To: "jedwards@optimumlawgroup.com" <jedwards@optimumlawgroup.com>
>>>
>>> December 20
>>>
>>> Sent from my iPhone
>>>
>>>> On Nov 12, 2019, at 6:20 PM, "jedwards@optimumlawgroup.com" <jedwards@optimumlawgroup.com> wrote:

Exhibit "C"

Case 2:19-cv-02222-ER Document 14-3 Filed 02/10/20 Page 20 of 13

<left.letterhead> Where do we stand with this?

**J. Edwards**
Office Manager
Optimum Law Group, P.C.
3000 Atrium Way - Suite # 200
Mt. Laurel, NJ 08054
856-652-2000 - Office
856-375-1010 - Fax
www.Optimumlawgroup.com

CONFIDENTIALITY NOTICE: The information contained in this e-mail message is privileged and confidential, and intended only for the use of the individual(s) and/or entity(ies) named above. If you are not the intended recipient, you are hereby notified that any unauthorized disclosure, copying, distribution or taking of any action in reliance of the contents of the e-mail materials is strictly prohibited and review by any individual other than the intended recipient shall not constitute waiver of the attorney/client privilege. If you have received this transmission in error, please immediately notify the Sender identified above by telephone to arrange for the return of the materials. Thank you.

-------- Original Message --------
Subject: Re: Rosario
From: Steven Feinstein <scf97@hotmail.com>
Date: Wed, October 16, 2019 3:54 pm
To: "jedwards@optimumlawgroup.com" <jedwards@optimumlawgroup.com>

Take a default against rosario's

I will do a motion to compel for discovery.

Sent from my iPhone

On Oct 16, 2019, at 3:41 PM, jedwards@optimumlawgroup.com wrote:

<left.letterhead> Steve:

Rosario's Restaurant defaulted.

The only party that answered was the promoter but has failed to answer discovery that was sent certified.

What do we do? A motion to dismiss?

**J. Edwards**
Office Manager
Optimum Law Group, P.C.
3000 Atrium Way - Suite # 200
Mt. Laurel, NJ 08054
856-652-2000 - Office
856-375-1010 - Fax
www.Optimumlawgroup.com

CONFIDENTIALITY NOTICE: The information contained in this e-mail message is privileged and confidential, and intended only for the use of the individual(s) and/or entity(ies) named above. If you are not the intended recipient, you are hereby notified that any unauthorized disclosure, copying, distribution or taking of any action in reliance of the contents of the e-mail materials is strictly prohibited and review by any individual other than the intended recipient shall not constitute waiver of the attorney/client privilege. If you have

Case 2:19-cv-02222-ER Document 14-3 Filed 02/10/20 Page 3 of 3

received this transmission in error, please immediately notify the Sender identified above by telephone to arrange for the return of the materials. Thank you.